LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1188
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLOS MARTIN DE LA CRUZ, *on behalf of himself and all others similarly situated*, | Case No.: 20-cv-977 |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| MANHATTAN PARKING GROUP LLC d/b/a MANHATTAN PARKING GROUP, METROPOLITAN PARKING GROUP LLC, UPTOWN PARKING CORP., RELIABLE PARKING, CORP., PROVO PARKING LLC, POO PARKING CORP., MP GARDEN OPERATING LLC, MP WEST 30 LLC, 1020 PARKING LLC, LAWRENCE LIPMAN, GREG GONZALEZ, RAFAEL MALDONADO and JOHN DOE ENTITIES 1-100, | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT**

Plaintiff CARLOS MARTIN DE LA CRUZ ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, as and for his Complaint against Defendants MANHATTAN PARKING GROUP LLC d/b/a MANHATTAN PARKING GROUP ("Group"), METROPOLITAN PARKING GROUP LLC ("MPG"), UPTOWN PARKING CORP. ("UPC"), RELIABLE PARKING, CORP., ("RPC"), PROVO PARKING LLC ("PPL"), POO PARKING CORP. ("POO"), MP GARDEN OPERATING LLC

("MPGOL"), MP WEST 30 LLC ("MPW30"), 1020 PARKING LLC ("1020"), LAWRENCE LIPMAN ("Lipman"), GREG GONZALEZ ("Gonzalez"), RAFAEL MALDONADO ("Maldonado") and JOHN DOE ENTITIES 1-100 ("John Does") (Group, MPG, UPC, RPC, PPL, POO, MPGOL, MPW30, 1020 and Does collectively referred to herein as "Corporate Defendants"; Lipman, Gonzalez, and Maldonado collectively referred to herein as "Individual Defendants"; Corporate Defendants and Individual Defendants collectively referred to herein as "Defendants"), states on information and belief as follows:

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and all others similarly situated to recover unpaid wages, overtime wages, liquidated damages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.* ("FLSA"), and Articles 6 and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL").

2. Defendants own or operate over 100 parking facilities throughout the New York City area. Plaintiff and others similarly situated worked for Defendants as parking attendants, washers, cashiers, and other laborers. Plaintiff and others similarly situated regularly worked in excess of 40 hours per week for Defendant, but were not compensated properly for all of the hours they worked, or for their overtime hours.

## PARTIES, JURISDICTION, AND VENUE

3. At all times relevant herein, Plaintiff was and is a resident of the State of New York, Bronx County. Plaintiff's consent to sue is submitted herewith as Exhibit 1.

4. At all times relevant herein, Defendant Group was and is a domestic limited-liability corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at 545 Fifth Avenue, Suite 600, New York, New York ("Fifth Avenue Office").

5. At all times relevant herrein, Defendant UPC was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Fifth Avenue Office.

6. At all times relevant herein, Defendant RPC was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Fifth Avenue Office.

7. At all times relevant herein, Defendant PPL was and is a domestic limited-liability corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Fifth Avenue Office.

8. At all times relevant herein, Defendant POO was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Fifth Avenue Office.

9. At all times relevant herein, Defendant MPGOL was and is a domestic limited-liability corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Fifth Avenue Office.

10. At all times relevant herein, Defendant MPW30 was and is a domestic limited-liability corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Fifth Avenue Office.

11. At all times relevant herein, Defendant 1020 was and is a domestic limited-

liability corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Fifth Avenue Office.

13. At all times relevant herein, the Defendant John Does are business entities of unknown citizenship having their principal places of business at the Fifth Avenue Office.

13. The John Does are other business entities affiliated with Defendants' enterprise, the number and identifies of which are not presently known. A list of current locations from the Group's website[1] is annexed hereto as Exhibit 2. The John Does include specifically but without limitation all entities listed in connection with the locations on Exhibit 2.

14. All of the Corporate Defendants' locations, including specifically but without limitation all of the locations listed in Exhibit 2, are operated as a single enterprise. All such locations are engaged in related activities, share common ownership and/or management, and have a common business purpose. The Corporate Defendants' employees move interchangeably from location to location as needed, and use stationery and equipment bearing the Group's name and logo. The Corporate Defendants provide the same terms of employment to employees at all locations pursuant to their collective bargaining agreement ("CBA") with Garage Employees Union Local 272 ("Union").

15. The CBA contains an arbitration agreement, but the provision makes no explicit reference to arbitrating charges arising under the FLSA or NYLL. Thus the CBA does not manifest a clear and unmistakable waiver by Union members of their rights to bring statutory claims in court.

16. The Corporate Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate

---

[1] https://mpsparking.com/locations (last accessed January 29, 2020).

commerce in that the Corporate Defendants transact with customers and vendors located outside of New York and employees of the Corporate Defendants handle goods and materials produced outside of New York (including vehicles, tools, cleaning supplies, and other items) that have moved in interstate commerce, and the Corporate Defendants are thus employers subject to the jurisdiction of the FLSA.

17. At all times relevant herein, Defendant Lipman was and is a citizen and resident of the State of New York, Westchester County.

18. Lipman is identified as the chief executive officer of UPC in its filings with the New York Department of State. Lipman was or is also an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the other Corporate Defendants.

19. At all times relevant herein, Defendant Gonzalez was and is a citizen and resident of the State of New York, Westchester County.

20. Gonzalez is identified as the chief executive officer of RPC and POO in their filings with the New York Department of State. Gonzalez was or is also an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the other Corporate Defendants.

21. At all times relevant herein, Defendant Maldonado was and is a citizen and resident of the State of New York, New York County.

22. At all times relevant herein, Maldonado was and is an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the Corporate Defendants.

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA. This Court has supplemental jurisdiction over

Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

24. This Court has personal jurisdiction over the Corporate Defendants in that they are incorporated in the state of New York and have their principal places of business therein, and/or they maintain substantial contacts with the State of New York and do significant business therein and profit thereby.

25. This Court has personal jurisdiction over the Individual Defendants in that they are citizens and residents of the State of New York.

26. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b), because one or more Defendants reside in this district and the events giving rise to Plaintiff's claims occurred herein.

## JURY DEMAND

27. Plaintiff demands a trial by jury of all issues so triable in this action.

## STATEMENT OF FACTS

*Wage And Hour Allegations*

28. Defendants own and/or operate over 100 parking facilities throughout the New York City area.

29. Plaintiff worked for Defendants as a parking attendant from February 2013 until his termination on or around August 15, 2019.  Throughout Plaintiff's employment with Defendants, Plaintiff and others similarly situated were paid at the applicable minimum hourly wage pursuant to the NYLL: $8.00 prior to December 31, 2014, $8.75 until December 31, 2015, $9.00 until December 31, 2016, $11.00 until December 31, 2017, $13.00 until December 31, 2018, and $15.00 thereafter.

30. During his employment with Defendants, worked at various locations including specifically but without limitation 145th Street and Amsterdam Avenue ("Amsterdam Lot"), 585 East 169th Street ("Reliable Lot"), 177th Street and Broadway ("MPG Lot"), Fordham Road and Tiebout Avenue ("Provo Lot"), 506 Lenox Avenue ("Uptown Lot"), and 1020 Grand Concourse ("1020 Lot"). The Reliable Lot, Uptown Lot, and 1020 Lot are each explicitly listed on Exhibit 2 as one of the locations owned and/or operated by the Group. The other lots are not clearly listed on Exhibit 2, but were owned and/or operated by the Corporate Defendants during the periods when Plaintiff worked at these locations.

31. Plaintiff worked primarily at the Amsterdam Lot from February 2013 until in or around January 2015. During this period his typical weekly schedule was 7 A.M. until 6 P.M., Monday through Friday, for a total of 11 hours per day and 55 hours per week. During this period, Plaintiff's paystubs issued from UPC.

32. From approximately January to June 2015, and then again from February 2016 until January 2017, Plaintiff worked primarily at the Reliable Lot. During this period his typical weekly schedule was 8 A.M. until 4 P.M., Monday through Friday, for a total of 8 hours per day and 40 hours per week. During this period, Plaintiff's paystubs issued from RPC.

33. From approximately June 2015 to February 2016, Plaintiff worked primarily at the MPG Lot. During this period his typical weekly schedule was 7:30 A.M. until 4 P.M., Saturday through Thursday, for a total of 8.5 hours per day and 51 hours per week. During this period, Plaintiff's paystubs issued from MPG.

34. From approximately January to March 2017, Plaintiff worked primarily at the Provo Lot. During this period his typical weekly schedule was 7 A.M. until 3 P.M. Monday through Friday and 8 A.M. until 8 P.M. on Sundays, for a total of 8 hours per day (12 on

Sundays) and 52 hours per week.  During this period, Plaintiff's paystubs issued from PPL.

35. From approximately March to September 2017, Plaintiff worked primarily at the Uptown Lot.  During this period his typical weekly schedule was 8 A.M. until 4 P.M., Monday through Friday, for a total of 8 hours per day and 40 hours per week.  During this period, Plaintiff's paystubs issued from UPC.

36. From approximately September 2017 to June 2019, Plaintiff worked at a variety of Defendants' locations in the Bronx and upper Manhattan.  During this period his schedule varied but he typically worked from 7:30 or 8 A.M. until 4 P.M., Monday through Friday, for a total of 8 or 8.5 hours per day and 40 to 42.5 hours per week.  During this period, Plaintiff received paystubs from a variety of Corporate Defendants, including UPC, RPC, PPL, POO, MPGOL, and 1020.

37. From approximately June 2019 until the end of his employment with Defendants on or around August 15, 2019, Plaintiff worked primarily at the 1020 Lot.  During this period his typical weekly schedule was 8 A.M. until 5 P.M., Monday through Friday, for a total of 9 hours per day and 45 hours per week.  During this period, Plaintiff's paystubs issued from 1020.

38. Despite regularly working over 10 hours per day, Plaintiff and others similarly situated never received spread-of-hours compensation as required under the NYLL.

39. Additionally, Defendants' timekeeping and payroll policies functioned to reduce the paid hours of Plaintiff and others similarly situated in violation of the FLSA and NYLL.

40. If Plaintiff or others similarly situated clocked in more than 10 minutes late for their scheduled shift, they would not be paid for their first hour of their scheduled shift.  For example, if Plaintiff was scheduled to work 8 A.M. to 4 P.M. but clocked into work at 8:11 that morning, he would only be paid for the hours he worked between 9 A.M. and 4 P.M. that day.

41. Similarly, if Plaintiff or others similarly situated continued to work after their scheduled shift for a period of time less than an hour, they would not be paid for that work. For example, if Plaintiff was scheduled to work 8 A.M. to 4 P.M. but did not finish his work until 4:14, he would not be paid for his extra 14 minutes of work that day. During his employment with Defendants, Plaintiff routinely worked 15 to 30 minutes per day after his shift for which he was not paid, amounting to an average of approximately 1-3 hours of unpaid work a week.

42. Defendants automatically deducted half an hour or an hour every day from the recorded work time of Plaintiff and others similarly situated. However, Plaintiff and others similarly situated were required to be on call daily throughout their shift, and as a consequence often did not have a free and clear break.

43. As a result of Defendants' timekeeping and payroll policies, Plaintiff and others similarly situated were routinely not paid for a significant amount of worked time per week. Between the unclocked time and the automatic meal deductions, Plaintiff routinely worked 5 to 10 hours or more per week for Defendants for which he was not paid.

44. As Plaintiff and others similarly situated routinely worked at or over 40 hours per week, these unlawful reductions in paid time served to deprive Plaintiff and others similarly situated of proper overtime pay as required under the FLSA and NYLL.

45. As Plaintiff and others similarly situated were at all relevant times paid at or near the NYLL minimum wage, these deductions served to reduce the average hourly wage of Plaintiff and others similarly situated to below the applicable NYLL minimum wage.

46. Defendants also failed to properly record the unpaid time Plaintiff and others similarly situated worked, and thereby failed to make and keep accurate payroll records and provided Plaintiff and others similarly situated with fraudulent wage statements in violation of

the FLSA and NYLL.

47. Defendants were or should have been aware of their statutory requirements as employers, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiff and others similarly situated for all of the time they worked, to pay spread-of-hours compensation when Plaintiff and others similarly situated worked in excess of 10 hours per day, and to make and preserve proper payroll records.

48. However, Defendants knowingly failed to pay Plaintiff and others similarly situated all of the regular and overtime wages to which they were entitled, and to make and preserve proper payroll records.

49. As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by Defendants.

50. Furthermore, these violations are ongoing, as Defendants continue to engage in the wrongful conduct described herein.

*Defendants are Joint Employers*

51. At all times relevant herein, the Corporate Defendants were and are parents, subsidiaries, or otherwise affiliated with each other.

52. The Corporate Defendants are a unified operation and joint enterprise in which all of the activities of the Corporate Defendants and other entities are related to each other.

53. The Corporate Defendants are all operated as a single business unit or economic entity. As a matter of economic reality there is no differentiation between the individual Corporate Defendants and the enterprise as a whole.

54. The Corporate Defendants share common ownership, management, and control.

55. The Corporate Defendants are all operated out of the same location, namely the

Fifth Avenue Office, and share the same phone number.

56. The Corporate Defendants share employees, administrative personnel, equipment, assets, liabilities, profits, and expenses.

57. Throughout his employment with Defendants, the entity from which Plaintiff received his pay intermittently varied among the Corporate Defendants, including specifically but without limitation UPC, RPC, PPL, POO, MPGOL, MPW30, and 1020. Each of the paystubs Plaintiff received from these various entities identified such entity's office as the Fifth Avenue Office, and provided the same phone number for each such entity. No matter which entity was named on his paystub, Plaintiff was always paid out of the same Chase bank account.

58. Notably, no matter which entity paid Plaintiff or which location he worked at, he always had the same managers and supervisors, namely the Individual Defendants.

59. The Corporate Defendants implemented the same or similar timekeeping and payroll policies complained of herein throughout the common enterprise.

60. At all times relevant herein, the Corporate Defendants were and are controlled by the Individual Defendants.

61. In their capacities as owners, shareholders, members, officers, directors, managers, and/or supervisors of the Corporate Defendants, the Individual Defendants have at all times relevant herein exercised operational control over the Corporate Defendants and the terms and conditions of the employment of Plaintiff and all others similarly situated.

62. Specifically, with respect to Plaintiff and other employees, the Individual Defendants had the power and authority to (i) hire and fire employees, (ii) set their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms, and conditions of their employment.

63. At all times relevant herein, the Individual Defendants exercised functional control over the business and financial operations of the Corporate Defendants, and had authority over all employee-related decisions, including specifically but without limitation payroll, personnel, and wage and hour policies concerning Plaintiff and all others similarly situated.

64. At all times relevant herein, the Individual Defendants had the power to direct, restrict, regulate, govern, and/or administer the activities of the Corporate Defendants.

65. At all relevant times the Individual Defendants and the Corporate Defendants were joint employers of Plaintiff and others similarly situated as a matter of economic reality, and as a result, all of the Defendants are jointly and severally liable for all claims made herein.

*FLSA Collective Action Allegations*

66. Plaintiff brings this action as a collective action pursuant to Section 16(b) of the FLSA on behalf of himself and all other parking attendants, washers, cashiers, and other non-exempt laborers employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("FLSA Collective Plaintiffs").

67. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper regular and overtime wages for their off-the-clock work. The FLSA claims of Plaintiff as stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

68. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA. The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their

names and addresses are readily available from Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

*Class Action Allegations*

69. Plaintiff brings claims for relief under the NYLL pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other parking attendants, washers, cashiers, and other non-exempt laborers employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("Class Period").

70. All said persons, including Plaintiff, are referred to herein as the "Class."  The members of the Class are readily ascertainable.  The number and identity of the members of the Class are determinable from Defendants' records.  The hours assigned and worked, the positions held, and rates of pay for each Class member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Rule 23.

71. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown, as the facts on which the calculation of that number would be based are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

72. Plaintiff's NYLL claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants (i) failing to pay spread-of-hours wages for work days in which Class members worked greater than 10 hours; (ii) failing to pay proper wages for off-the-

clock work; and (iii) failing to provide proper wage statements that were in compliance with the requirements under the NYLL.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiff sustained similar losses, injuries, and damages as other Class members, wth such injuries and damages arising from the same unlawful policies, practices, and procedures.

73.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

74.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result in a significant saving of these costs.  The prosecution of

separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

75. When wage and hour violations arise, current and former employees are often afraid to assert their rights.  Current employees fear direct or indirect retaliation by their employers, while former employees are fearful of damage to their current or future employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

76. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a. Whether Defendants employed Plaintiff and other Class members within the meaning of the NYLL;

   b. What are and were Defendants' policies and procedures regarding the types of work and labor for which Defendants did not pay the Class members properly;

   c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the Class members for their work;

   d. Whether Defendants properly notified Plaintiff and other Class members of their hourly rate and overtime rate;

   e. Whether Defendants provided proper wage statements and wage and hour notices

      to Plaintiff and other Class members per requirements of the NYLL;

    f. Whether Defendants properly paid Plaintiff and other Class members spread-of-hours compensation per the requirements of the NYLL; and

    g. Whether Defendant properly compensated Plaintiff and other Class members for all hours worked under the NYLL.

### FIRST CAUSE OF ACTION
### (FLSA Collective Action)

77. Plaintiff repeats each and every previous allegation as if fully set forth herein.

78. At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of the Corporate Defendants within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

79. At all relevant times the Corporate Defendants as a joint enterprise were an employer within the meaning of the FLSA.

80. At all relevant times the Corporate Defendants and the Individual Defendants were joint employers of Plaintiff and the other FLSA Collective Plaintiffs.

81. As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked regular and overtime hours for Defendants for which they were not paid, in violation of the FLSA.

82. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due.

83. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular

and overtime wages. Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (NYLL Class Action)

84. Plaintiff repeats each and every previous allegation as if fully set forth herein.

85. At all relevant times Plaintiff and the other Class members were employees of the Corporate Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

86. At all relevant times the Corporate Defendants as a joint enterprise were an employer within the meaning of the NYLL.

87. At all relevant times the Corporate Defendants and the Individual Defendants were joint employers of Plaintiff and the other Class members.

88. As alleged herein, Plaintiff and the other Class members regularly worked in excess of 10 hours per day and 40 hours per week, but were not paid all of the wages to which they were entitled under the NYLL, including minimum-wage, overtime, and spread-of-hours wages.

89. Defendants also failed to provide Plaintiff and the other Class members with accurate wage statements, as required under the NYLL.

90. Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other Class members for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage statements.

91. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. Designation of Plaintiff as representative of the FLSA Collective Plaintiffs;

b. Designation of this action as a class action pursuant to Rule 23;

c. Designation of Plaintiff as representative of the Class;

d. Compensatory damages in an amount to be determined at trial, including unpaid regular, minimum-wage, spread-of-hours, and overtime wages;

e. Liquidated damages pursuant to the FLSA and NYLL;

f. Pre- and post-judgment interest; and

g. Plaintiff's costs and reasonable attorney's fees;

Together with such other and further relief as the Court deems just and proper.

Dated: February 5, 2020
New York, New York

LEE LITIGATION GROUP, PLLC

By: _____*/s/ C.K. Lee*_____
C.K. Lee
Anne Seelig
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1188
*Attorneys for Plaintiff*