**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLOS MARTIN DE LA CRUZ, *on behalf of himself, FLSA Collective Plaintiffs and the Class*, <br><br> Plaintiff, <br><br> v. <br><br> MANHATTAN PARKING GROUP LLC d/b/a MANHATTAN PARKING GROUP, METROPOLITAN PARKING GROUP LLC, UPTOWN PARKING CORP., RELIABLE PARKING CORP., PROVO PARKING LLC, POO PARKING CORP., MP GARDEN OPERATING LLC, MP WEST 30 LLC, MP GARDEN OPERATING LLC, 1020 PARKING LLC, LA WRENCE LIPMAN, GREG GONZALEZ, RAFAEL MALDONADO and JOHN DOE ENTITIES 1-100, <br><br> Defendants. | Civil Action No.: 20-cv-977 (BCM) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR AN ORDER (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND COLLECTIVE ACTION, (2) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, (3) DIRECTING DISSEMINATION OF NOTICE AND RELATED MATERIAL TO THE CLASS, AND (4) SETTING DATE FOR FAIRNESS HEARING AND RELATED DATES**

**LEE LITIGATION GROUP, PLLC**

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .........................................1

    I.      Procedural History ......................................................................1

    II.     Overview of Investigation and Discovery ...................................2

    III.    Settlement Negotiations ..............................................................2

SUMMARY OF THE SETTLEMENT TERMS .................................................3

    I.      The Settlement Fund ...................................................................3

    II.     Release ........................................................................................3

    III.    Class ...........................................................................................4

    IV.    Notice .........................................................................................4

    V.     Allocation ...................................................................................4

    VI.    Attorneys' Fees and Litigation Costs .........................................5

    VII.   Service Award .............................................................................5

    VIII.  Administration Fees ....................................................................6

CLASS ACTION SETTLEMENT PROCEDURE ..............................................7

ARGUMENT ....................................................................................................8

    I.      Preliminary Approval of the Settlement Is Appropriate ............8

          A.    The Settlement Is Fair, Reasonable, and Adequate .....................10

               1.    Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1) ............................................................11

               2.    The Reaction of the Class Has Been Positive (Grinnell Factor 2) ...................................................................................12

               3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)...................12

               4.    Plaintiff Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5) .......................................................13

               5.    Establishing a Class and Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6)....................................15

               6.    Defendants' Ability to Withstand a Greater Judgment (Grinnell Factor 7) ................................................................15

               7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9) .............................................16

i

II.    Conditional Certification of the Rule 23 Class Is Appropriate ............................17

    A.    Numerosity ................................................................................................18

    B.    Commonality ............................................................................................18

    C.    Typicality .................................................................................................19

    D.    Adequacy of the Named Plaintiff ...........................................................19

    E.    Certification Is Proper Under Rule 23(b)(3) ...........................................20

        1.    Common Questions Predominate ................................................20

        2.    A Class Action Is a Superior Mechanism ...................................21

III.    The Class Satisfies Section 16(b) of the FLSA ...............................................22

IV.    Plaintiff's Counsel Should Be Appointed as Class Counsel ..............................23

V.    The Proposed Class Notice Is Appropriate .......................................................24

    A.    The Proposed Class Notice Satisfies Due Process ...................................24

    B.    The Notice Plan and Release Are Appropriate ..............................................25

VI.    Approval of the FLSA Settlement is Appropriate Under Federal Law..............25

CONCLUSION....................................................................................................................26

## TABLE OF AUTHORITIES

Page

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................18

*Asare v. Change Grp. of New York, Inc.*,
No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .........................18

*Azogue v. 16 for 8 Hosp. LLC*,
No. 13 Civ. 7899, 2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016) ......................................5

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467, 475 (S.D.N.Y. 2013) ...........................................................5, 12, 14

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013).........................................................................................8, 22

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................................... passim

*Contrera v. Langer*,
278 F. Supp. 3d 702 (S.D.N.Y. 2017) ........................................................................20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007).............................................................................................17

*County of Suffolk v. Long Island Lighting Co.*,
710 F. Supp. 1422 (E.D.N.Y. 1989),
*aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990) ..................15

*Davis v. J.P. Morgan Chase & Co.*,
775 F. Supp. 2d 601 (W.D.N.Y. 2011) ..........................................................................9

*Espinoza v. 953 Assocs. LLC*,
280 F.R.D. 113 (S.D.N.Y. 2011) ................................................................................18

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ....................................................................................................16

*Grant v. Warner Music Grp. Corp.*,
No. 13 Civ. 4449 (PGG), 2015 WL 10846300 (S.D.N.Y. Aug. 21, 2015)......................15

*Hadel v. Gaucho*, LLC,
193 F. Supp. 3d 243 (S.D.N.Y. 2016) ...........................................................................6

*Henry v. Little Mint, Inc.*,
No. 12 Civ. 3996 (CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014)..........................12

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000),
    *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .............11, 12, 13

*In re Doria/Memon Disc. Stores Wage & Hour Litig.*,
    No. 14 Civ. 7990, 2017 WL 4541434 (S.D.N.Y. Oct. 10, 2017) ......................................17

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...................................10

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .........................................................................................8, 12

*Kelen v. World Fin. Network Nat. Bank*,
    302 F.R.D. 56 (S.D.N.Y. 2014) ............................................................................................8

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) ........................................................................................17

*Lizondro-Garcia v. Kefi LLC*,
    300 F.R.D. 169 (S.D.N.Y. 2014) .....................................................................................9, 18

*Lynch v. United Services Automobile Assoc.*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) ................................................................................19

*Peoples v. Annucci*,
    180 F. Supp. 3d 294 (S.D.N.Y. 2016) ..................................................................................9

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) ....................................................................................6, 14

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ......................................6

*Romero v. La Revise Assocs.*, L.L.C.,
    58 F. Supp. 3d 411 (S.D.N.Y. 2014) ...............................................................9, 10, 14, 16

*Sanders v. CJS Sols. Grp., LLC*,
    No. 17 Civ. 3809 (ER), 2018 WL 620492 (S.D.N.Y. Jan. 30, 2018) ...............................17

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011) ...............................................................................................15

*Snead v. Interim HealthCare of Rochester, Inc.*,
    286 F. Supp. 3d 546 (W.D.N.Y. 2018) ................................................................................9

*Surdu v. Madison Global, LLC*,
    No. 15 Civ. 6567 (HBP), 2018 WL 1474379 (S.D.N.Y. Mar. 23, 2018) ................... 10, 11

*Vargas v. Howard*,
    No. 15 Civ. 5101 (GHW), 2018 WL 387896 (S.D.N.Y. Jan. 10, 2018)............................16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................8, 9, 14

**STATUTES**

29 U.S.C. § 216(b) ....................................................................................................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................... passim

Herbert B. Newberg & Alba Conte*, Newberg on Class Actions* (5th ed. 2017).................. passim

Weinstein-Korn-Miller, *New York Civil Practice* ¶ 901.19.........................................19

## PRELIMINARY STATEMENT

Subject to the Court's approval, Plaintiff Carlos Martin de la Cruz ("Plaintiff" or "Named Plaintiff") and Defendants Manhattan Parking Group LLC d/b/a Manhattan Parking Group, Metropolitan Parking Group LLC, Uptown Parking Corp., Reliable Parking Corp., Provo Parking LLC, Poo Parking Corp., MP Garden Operating LLC, MP West 30 LLC, 1020 Parking LLC, LA Wrence Lipman, Greg Gonzalez, Rafael Maldonado and John Doe Entities 1-100 (collectively, "Defendants," and together with Plaintiff, the "Parties"), have settled this wage and hour class and collective action for $1,200,000 (the "Settlement"). The Settlement satisfies all of the criteria for preliminary approval.

Plaintiff respectfully requests that the Court enter his Proposed Order and: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement"), attached as **Exhibit A** to the Declaration of C.K. Lee ("Lee Declaration"), (2) conditionally certify the settlement class under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for settlement purposes only, (3) approve the proposed Notice of Proposed Class Action Settlement ("Class Notice"), attached as **Exhibit B** to Lee Declaration, (4) approve Plaintiff's proposed schedule for final settlement approval and set a date for the fairness hearing and related dates, (5) appoint C.K. Lee of Lee Litigation Group PLLC ("Plaintiff's Counsel") as counsel for the class ("Class Counsel"), and (6) appoint Arden Claims Service as the claims administrator.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Procedural History

On February 5, 2020, Plaintiff filed the instant lawsuit seeking to bring class and collective action claims against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Complaint alleged that Defendants failed to pay Plaintiff and all hourly

parking attendants, cashiers, and other non-exempt workers the proper wages due to time shaving, failed to pay them the proper spread-of-hours premium, and failed to provide them with proper wage statements and wage notices.  Plaintiff sought to recover, on behalf of himself and others he claimed were similarly situated, unpaid wages and spread-of-hours premiums, liquidated damages and penalties, injunctive relief and attorneys' fees and costs.

On May 29, 2020, Defendants filed their Answer to the Complaint.  On June 30, 2020 the Parties participated in an initial conference. Following informal settlement discussions between the Parties, on August 25, 2020, the Parties informed the Court of their intention to engage in formal, private, class-wide mediation.  On December 1, 2020, the Parties participated in a full day mediation with Martin F. Scheinman.

## II.        Overview of Investigation and Discovery

Plaintiff's Counsel conducted a thorough investigation of the Parties' claims and defenses, focusing on the underlying merits of the claims of Class Members (defined below), the damages to which they may have been entitled, and the propriety of class certification.  Prior to mediation, Defendants produced a sampling of class documents for ten of Defendants' garages located in New York City. The sampling included more than 14,000 pages of payroll records and an Excel spreadsheet with more than 89,800 rows of time records, including the names, employment periods, and clock in/clock out times of potential class members. Plaintiff's Counsel also interviewed his client concerning the claims in the case.  Based on this discovery, Plaintiff's Counsel was able to assess the merits of Plaintiff's claims, the likelihood of class or collective action certification, and potential damages.

## III.       Settlement Negotiations

On December 1, 2020, after having engaged in numerous informal telephonic settlement discussions, the Parties engaged in a full-day in-person mediation with Martin F. Scheinman, a

highly respected mediator experienced in resolving complex employment disputes. During this mediation, the Parties reached a settlement in principle and, during the weeks thereafter, the Parties continued to negotiate and, on January 4, 2021, the Parties executed a class settlement agreement ("Settlement Agreement"). Had the Parties failed to settle amicably, the Parties would have continued to engage and/or seek additional time to complete formal written discovery, produced documents, conducted depositions, and retained and deposed experts. In addition, Plaintiff would have moved for class certification of state-law claims pursuant to Fed. R. Civ. P. 23, Defendants would have moved for decertification, and one or both Parties would have moved for summary judgment, each at significant cost to the Parties.

## SUMMARY OF THE SETTLEMENT TERMS

### I.      The Settlement Fund

The Parties agreed to settle the lawsuit for a total settlement amount of $1,200,000 (the "Settlement Fund"). The $1,200,000 covers Class Members' awards, a service award to the Named Plaintiff, attorneys' fees and costs, and costs of settlement administration. The "Net Settlement Amount" is the Settlement Fund minus the amount of service award approved by the Court, the amounts of attorneys' fees and reimbursement for costs approved by the Court, and reasonable costs of settlement administration.

### II.     Release

The Settlement Agreement provides that Named Plaintiff and each Class Member who does not timely opt out of the Settlement will release Defendants from all wage and hour claims that have been brought, or could have been brought, under the NYLL or the regulations thereunder.

III.  **Class**

The "Class Members" are defined as Named Plaintiff and all hourly parking attendants, cashiers, and other non-exempt workers, who were employed by Defendants at any time between February 5, 2014 and the date of preliminary approval, and who do not opt out of the litigation.

IV.  **Notice**

The Settlement Agreement provides that, within thirty (30) days of entry of this Court's Order granting preliminary approval, notice will be mailed to the last known address of each Class Member, which information will be provided by Defendants.  The claims administrator will take reasonable steps to obtain the correct address of any Class Member whose notice is returned as undeliverable and will attempt to re-mail notices to those Class Members.

The proposed Class Notice contains information about how Class Members can exclude themselves from and/or object to the Settlement.  Class Members will have forty-five (45) days from the date of notice mailing to submit opt-out requests or object to the Settlement.

Every Class Member who does not opt out will receive a settlement check after final approval of the Settlement, provided they complete and return a timely, valid tax form to the claims administrator.  Each settlement check will contain the following affirmation:

> *"By my endorsement of this check, I opt into the lawsuit S.D.N.Y. 20-cv-00977, for settlement purposes only, and release all of my claims as described in the class settlement agreement."*

Class Members that deposit, endorse or cashes their settlement checks will be bound by the release of the FLSA claims.

V.  **Allocation**

Every Class Member who does not opt out and submits a valid tax form ("Qualified Class Member") will receive a settlement check containing his or her settlement payment.  The claims administrator will determine the settlement payments to each Class Member using data provided

by Defendants.  As set forth in Section 3.5 of the Settlement Agreement, after the deduction of all court-approved service award, attorneys' fees and costs, and administration fees from the Settlement Fund, individual settlement allocations will be computed based on the number of weeks worked by Class Members during the relevant period.  The settlement allocations shall be made in accordance with the dates of employment as set forth in the confidential documents provided by Defendants' counsel.  The funds remaining from any uncashed checks after the check expiration period shall be void and cancelled and returned to Defendants.

## VI.  <u>Attorneys' Fees and Litigation Costs</u>

Consistent with the Settlement Agreement, Plaintiff's Counsel will apply for reimbursement from the Settlement Fund for their litigation costs, and for attorneys' fees equal to one-third of the Settlement Fund.[1]  Based on a Settlement Fund of $1,200,000, Plaintiff's Counsel will be requesting attorneys' fees of $400,000, plus expenses and costs.  The proposed Class Notice will explain Plaintiff's Counsel's request to Class Members.  The Court need not rule on fees and costs now.  Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiff's Counsel will subsequently file a formal motion for approval of attorneys' fees and reimbursement of expenses, simultaneously with his motion for final approval of the Settlement.  Defendants will not oppose the motion provided it does not increase the Settlement Fund.

## VII.  <u>Service Award</u>

Named Plaintiff, Carlos Martin de la Cruz, will apply for a service award of $15,000, in recognition of the services he rendered on behalf of the Class, and in exchange for his global

---

[1]  Attorneys' fees in this range are commonly awarded in wage and hour class and collective litigation of this type.  *See, e.g.*, *Azogue v. 16 for 8 Hosp. LLC*, No. 13 Civ. 7899, 2016 WL 4411422, at *6 (S.D.N.Y. Aug. 19, 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (citing *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *26 (S.D.N.Y. Oct. 2, 2013)); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (same).

release of all claims.  Plaintiff has served the Class well by assisting with the preparation of the pleadings, the factual investigation of the claims, in discovery and participating during mediation. Plaintiff was responsive throughout the duration of the litigation and provided consistent assistance and information to his counsel. Courts routinely approve service awards of or exceeding the size requested here in wage and hour class and collective actions. *See Viafara v. MCIZ Corp., et al.* 12-cv-7452 (approving a total service award of $25,000 to class representative); Willix, 2011 WL 754862, at *7 (approving a service award of $30,000); *Han, et al. v. Sterling National Mortgage Company, Inc., et al.*, 09 Civ. 5589 (E.D.N.Y. August 9, 2012) (approving service awards of $25,000 to each class representative in wage and hour action under FLSA and NYLL); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 Civ. 7993, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (upholding a $40,000 service award in FLSA and NYLL wage and hour action). Here, Plaintiff's service award represents only approximately 1.25% of the settlement (or 2.06% of the Net Settlement Fund), which is reasonable in light of the ultimate recovery. *See, e.g., Reyes,* 2011 WL 4599822, at *1, *9 (approving awards totaling $50,000, representing approximately 16.6% of the $300,000 settlement); *Parker,* 2010 WL 532960, at *2 (finding that service awards totaling 11% of the total recovery are reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"). The proposed Class Notice will explain Plaintiff's request for a service award.  Plaintiff will move for Court approval of the service award simultaneously with his motion for final approval of the Settlement.  Defendants will not contest the service award.

## VIII.   <u>Administration Fees</u>

Class Counsel will retain a third-party claims administrator, Arden Claims Service ("Claims Administrator"), to mail the Class Notice to Class Members, receive and process objections and opt-out statements, calculate each Class Member's individual settlement award and

tax withholdings, pay out the Settlement Fund, provide weekly reports detailing the results of the mailings and participation, and answer Class Member inquiries.  The Claims Administrator will be required to agree to a reasonable cap for administration fees and expenses, which the Parties estimate to be $60,000. The administration fee of $60,000 is intended to compensate the settlement administrator for administering to a class pool of over 1,500 individuals. The Claims Administrator will undertake, *inter alia*, class liability calculations, serving class notice to Class Members, conducting skip traces where necessary, and corresponding with counsel regarding the results on a weekly basis at minimum. Its ongoing administrative duties will include mailing settlement checks, updating Class Members' addresses, reissuing checks, on-going correspondence with Class Members and handling tax reporting. Due to the over-1,500 person class size, the capabilities of the administrator and the market rates for settlement administration in 2021, we believe the administration fee is fair and reasonable.

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and conditional certification of the settlement class;

2.  Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.  A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented, and the Court may finally certify the settlement class.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte*, Newberg on Class Actions* ("*Newberg*") §§ 13.10 *et seq*. (5th ed. 2017).  This process safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  With

this motion, Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, appointing Plaintiff's Counsel as Class Counsel, and approving the proposed Class Notice and authorizing the Claims Administrator to send it.

The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1. Within ten (10) calendar days following the entry of an order granting preliminary approval, Defendants will, based on the records in its custody and/or control, provide the Claims Administrator and Class Counsel with lists, in electronic form, of the names, last known addresses, and phone numbers of all Class Members, as well as their dates of employment while working in a position covered by this Settlement during the relevant period.

2. The Claims Administrator will mail the Class Notice to Class Members within thirty (30) calendar days following the entry of an order granting preliminary approval.

3. Class Members will have forty-five (45) days after the date the Class Notice are mailed to opt out of or object to the settlement ("Opt-Out Period"). Plaintiff will file a motion final approval of the Settlement and will separately file a motion for attorneys' fees and costs and a motion for service award, no later than fifteen (15) calendar days prior to the scheduled fairness hearing.

4. If the Court grants Plaintiff's motion for final approval of the Settlement, the Court will enter judgment in accordance with the Settlement Agreement and dismiss the case with prejudice.

## ARGUMENT

## I.   Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *see also Newberg*

§ 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) ("A district court's approval of a class action settlement is reviewed for exceeding its discretion. . . . In class settlement cases, we accord the trial judge's views 'great weight' because of her position 'on the firing line, 'where she is' exposed to the litigants, and their strategies, positions and proofs") (internal citations omitted); *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) ("It is within a trial court's discretion to approve a proposed class action settlement."). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties," and keep in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Id.* (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Id.* To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (citing *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (same); *Newberg* § 11.25 ("[C]ourts will grant preliminary approval where the proposed settlement 'is neither illegal nor collusive and is within the range of possible approval.'") (citations omitted).

Courts determine fairness upon review of both "the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116. "A presumption of fairness,

adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (citations omitted); *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 552 (W.D.N.Y. 2018) (recognizing that courts treat the adversarial nature of a litigated FLSA case as an "adequate indicator" of the fairness of a settlement) (quoting *Romero v. La Revise Assocs.*, *L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014)).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Preliminary approval is the first step in the settlement process.  It simply allows notice to issue to the Class and for Class Members to object or opt out of the Settlement.  After the Opt-Out Period, the Court will be able to evaluate the Settlement with the benefit of the Class Members' input.

A.      **The Settlement Is Fair, Reasonable, and Adequate.**

Although the Court's task on a motion for preliminary approval is merely "to determine whether notice of the proposed settlement should be sent to the Class, not to make a final determination of the settlement's fairness," *Newberg* § 13.13, it is useful for the Court to consider the criteria by which it will ultimately judge the settlement.

In evaluating a class action settlement, courts in the Second Circuit "look to the so-called 'Grinnell factors'" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See, e.g., Romero*, 58 F. Supp. 3d at 420; *accord Surdu v. Madison Global, LLC*, No. 15 Civ. 6567

(HBP), 2018 WL 1474379, at *4 (S.D.N.Y. Mar. 23, 2018).  The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1. **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and [the] multitude of other problems associated with them." *Surdu*, 2017 WL 3842859, at *10 (S.D.N.Y. Sept. 1, 2017) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)).  This case is no exception, with approximately 1,500 potential class members and significant legal disputes over the propriety of class/collective action certification and as to the merits.

Although the Parties have already undertaken time and expense litigating and mediating this matter, further litigation without settlement would necessarily result in additional expense and delay.  There would be depositions, expert discovery, motions for class certification under Fed. R. Civ. P. 23, a motion for decertification, and ultimately summary judgment proceedings, each at significant cost to the parties.  A complicated trial would also likely be necessary.  Preparing and

putting on evidence on the complex factual and legal issues at such a trial would consume vast amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the dispute.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  The Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Notice of the Settlement and its details has not yet issued to the Class.  The Court should more fully analyze this factor after Class Members have been given the opportunity to opt out or object.  At this early stage in the process, given that Plaintiff has agreed to the terms of the Settlement, this factor weighs in favor of preliminary approval.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require many more hours of discovery work for both sides, and the filing and adjudication of respective summary judgment motions, the Parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman*, 293 F.R.D. at 475 (quoting *Warfarin*, 391 F.3d at 537).  The pretrial negotiations and discovery must be sufficiently adversarial that they are "not designed to justify a settlement, [but rather represent] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal citations omitted).

The Parties' discovery here meets this standard.  Plaintiff's Counsel conducted in-depth interviews with Plaintiff to determine the hours he worked, the nature of any potential wage claims he had against Defendants, the wages he was paid, the nature of his daily activities, and other

information relevant to his claims and the claims of class members.  Prior to mediation, Defendants produced a sampling of class documents for ten of Defendants' garages located in New York City. The sampling included more than 14,000 pages of payroll records and an Excel spreadsheet with more than 89,800 rows of time records, including the names, employment periods, and clock in/clock out times of potential class members.  Therefore, this factor favors preliminary approval.

### 4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014) (quoting *In re Austrian*, 80 F. Supp. 2d at 177).  Although Plaintiff believes his case is strong, it is subject to considerable risk as to liability and damages.  A trial would involve significant risks to Plaintiff because of the fact-intensive nature of proving liability under the FLSA and the NYLL, especially in regard to the time shaving claim, which is highly dependent on testimony, and in light of Defendants' relatively strong record-keeping.

Indeed, the voluminous paper discovery produced by Defendants highlighted the riskiness of further litigation. The documents provided did not demonstrate any time shaving on their face. In strong time-shaving cases, time records facially indicate systematic policies of rounding down hours or automatically deducting breaks from compensation. In those cases, the records make it apparent that wages were not paid for all working hours. Here, however, Defendants argue that the tens of thousands of pages of time and payroll records do not indicate that Class Members were systematically subjected to rounding, automatic deduction, or any other policy from which time-shaving can be reasonably inferred, and Defendants contend that all of their employees clocked in and out for work during each shift.

Other class claims similarly entailed risk. While there was no dispute that spread-of-hours premium was not paid to all Class Members, Defendants argue that they were not legally obliged to pay spread-of-hours premium to most of the Class. For the early part of the covered time period, between the years 2016 and 2017, employees were paid above the minimum wage so spread-of-hours does not apply. Moreover, for later years, from 2018 to the present, the documents produced suggest that although some employees at a few of the ten sampled locations worked more than ten hours with no visible spread-of-hours compensation, it was not based on any systematic approach by Defendants to willfully withhold spread-of-hours premium. Many employees did not work shifts lasting more than ten hours, and compensation patterns varied by location and employee.

Plaintiff's and the Class' statutory claims that Defendants failed to provide proper wage statements in compliance with the law would also be risky if the case were to proceed to trial. Specifically, Plaintiff alleged that due to Defendants' policies of time shaving, rounding, and not paying spread-of-hours premiums when they were owed, the wage statements provided do not state the *actual* hours worked by employees. However, the records indicated that such damages would not apply to all of the purported class members. Since Defendants did provide wage statements to their employees, the only issue is whether the hours are accurate, which is contingent on Plaintiff prevailing on his other claims (which, again, are based on testimony and are themselves highly risky). If Plaintiff does not prevail on his time shaving, rounding, and spread-of-hours claims, then his wage statement claim is mooted.

Similarly, Plaintiff and Class Members brought statutory claims that Defendants failed to provide proper wage notices. Although Defendants acknowledge that wage notices were deficient, they would likely raise the affirmative defense available to them – that no harm was ultimately done since Plaintiff and Class Members were paid all of their wages – and it is unclear who would

prevail. While Plaintiff believes that he could ultimately establish Defendants' liability, to do so would require significant factual development. The circumstances of this case presented hurdles to a successful recovery as Plaintiff's claims are highly fact-specific and require a plaintiff-friendly interpretation of the law. Plaintiff's Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs heavily in favor of preliminary approval.

### 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

If the litigation continues, there is significant risk that the Court will decertify any conditionally certified FLSA class before the end of trial.  Defendants have experienced and skilled counsel, who will formally oppose any subsequent motion to certify Plaintiff's state-law claims under Rule 23.  Settlement eliminates the risk, expense, and delay associated with maintaining certification.  This factor favors preliminary approval.

### 6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Defendants maintain that they are unable to withstand a greater judgment.  Defendants operate Manhattan Parking, a privately owned company that operates more than 100 parking facilities with over 20,000 parking spaces in New York City and Westchester County. As a result of the current coronavirus pandemic, normal commuting patterns and office/building operations across the city have been all but completely halted, having a significant effect on Defendants' business operations. Moreover, Defendants contend that they should not be expected to withstand a greater settlement amount given their well-established legal and factual defenses in this action, which includes supporting time and compensation/payroll records. However, even if Defendants

were able to withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Beckman*, 293 F.R.D. at 476 (internal citation marks omitted).

> **7.      The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Wal-Mart*, 396 F.3d at 119).

Defendants have agreed to settle this case for $1,200,000, which Plaintiff and Plaintiff's counsel believe to be both fair and reasonable.  Plaintiff's counsel performed damages calculations based on the payroll and employment records produced by Defendants prior to mediation, together with certain assumptions, and in such basis estimated the Class Members' total damages to be in the tens of millions of dollars (approximately $26,494,000), resulting in a 4% recovery. However, these calculations were based on three robust assumptions that, if reduced to a more conservative position, would yield a far lesser damages calculation and a far greater percentage recovery: (i) first, we assumed each Class Member lost three hours to rounding (15 to 30 minutes before and after each shift) per workweek, (ii) second, we assumed each Class Member lost 2.5 hours to time shaving due to an automatic deduction of 30 minutes for five days a week, and (iii) third, we assumed each Class Member was owed spread-of-hours for one day per workweek. Moreover, our calculations assumed each employee worked every day of their employment period, with no days off, vacation, sick days or holidays. Under a more conservative set of assumptions, the sum of

$1,200,000 represents a good value given the attendant risks of litigation, providing each of the 1,500 Class Members with approximately $800 on a gross-settlement basis. Once deductions for administration fees, attorneys' fees and costs, and a service award are made, each Qualified Class Member will receive a payment that is proportional to the number of the weeks they worked during the relevant class period.  Thus, for instance, a Qualified Class Member who worked for two years will receive a considerably larger share than a Qualified Class Member who worked for six months. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. This is especially true during the current pandemic, which has continued to present Defendants with financial and operational challenges.

Thus, the *Grinnell* factors all weigh in favor of granting preliminary approval of the Settlement at this early stage.  Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Romero*, 58 F. Supp. 3d at 420 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## II.   Conditional Certification of the Rule 23 Class Is Appropriate

For settlement purposes, Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(a) and 23(b)(3):

Named Plaintiff and all hourly parking attendants, cashiers, and other non-exempt workesr who were employed by Defendants at any time between February 5, 2014 and the date of preliminary approval, and who do not opt out of the litigation. As discussed below, Plaintiff contends, and Defendants do not dispute for settlement purposes only, that this settlement class meets all of the requirements for class certification.  See *Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is

appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Conditional Rule 23 class certification for settlement purposes and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing. *See Grant v. Warner Music Grp. Corp.*, No. 13 Civ. 4449 (PGG), 2015 WL 10846300, at *1 (S.D.N.Y. Aug. 21, 2015) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3rd Cir. 1995)).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Plaintiff contends that all such criteria are met.

### A.     **Numerosity**

Numerosity is presumed where a putative class has forty (40) or more members. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  Plaintiff contends that he can easily satisfy the numerosity requirement because there are approximately one thousand and five hundred (1,500) Class Members.

### B.     **Commonality**

The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  In Plaintiff's view, the required relationship between the claims of Plaintiff and those of the Class clearly exists here.

Plaintiff asserts that he and Class Members bring similar claims that involve numerous common issues.  Specifically, Plaintiff asserts that Defendants similarly failed to pay him and Class Members the proper wages and spread-of-hours premiums, and also failed to provide them with wage statements and wage notices in conformity with the NYLL.  Plaintiff contends that other common issues include, but are not limited to: (a) whether Defendants employed Plaintiff and members of the Class within the meaning of New York and federal law; (b) Defendants' practices regarding purported time shaving and rounding; and (c) the nature of Defendants' policies and practices regarding the types of work for which Defendants allegedly did not properly pay the Class Members.

### C.  Typicality

Rule 23 requires that the claims of the class representatives be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Romero*, 58 F. Supp. 3d at 418.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Vargas v. Howard*, No. 15 Civ. 5101 (GHW), 2018 WL 387896, at *4 (S.D.N.Y. Jan. 10, 2018) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

Plaintiff contends that his claims arise from the same factual and legal circumstances that form the bases of Class Members' claims and that typicality is thus satisfied.  Plaintiff contends that he and Class Members were all hourly, non-exempt employees employed at Defendants' garages, and that they were subject to the same policies as identified above.

### D.  Adequacy of the Named Plaintiff

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that

the named representative will 'have an interest in vigorously pursuing the claims of the class, and

. . . have no interests antagonistic to the interests of other class members.'" *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 164 (S.D.N.Y. 2017) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Sanders v. CJS Sols. Grp., LLC*, No. 17 Civ. 3809 (ER), 2018 WL 620492, at \*5 (S.D.N.Y. Jan. 30, 2018) (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).  There is no evidence that Plaintiff has interests that are antagonistic or at odds with Class Members—on the contrary, Plaintiff's interests are clearly aligned with the interests of the class. *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14 Civ. 7990, 2017 WL 4541434, at \*6 (S.D.N.Y. Oct. 10, 2017) ("[Plaintiff's] interests, recouping money invested, are similar to those of the proposed class").

**E.**     **Certification Is Proper Under Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.**     **Common Questions Predominate**

Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-8 (2d Cir. 2007) (internal quotations marks omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). The predominance requirement, which is meant to test "whether proposed classes are sufficiently cohesive to warrant

adjudication by representation," is "a more demanding criterion than the commonality inquiry under Rule 23(a)" and is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lizondro-Garcia*, 300 F.R.D. 169 at 176 (S.D.N.Y. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

Plaintiff asserts that Class Members' common factual allegations and common legal theory – that Defendants failed to pay proper wages and spread-of-hours premiums to all hourly parking attendants, cashiers, and other non-exempt employees – predominates over any factual or legal variations among class members. Similarly, Plaintiff's claims that his other common questions and legal theories – including an alleged failure to provide proper wage statements and notices – predominate over any individual questions related to those inquiries. Thus, predominance is satisfied for purposes of certifying a settlement class.

### 2. A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Asare v. Change Grp. of New York, Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *8 (S.D.N.Y. Nov. 18, 2013); (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968)); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Here, settlement on a class basis is superior to other available methods for the fair and efficient resolution of this action. The alternative would be the potential filing of many hundreds of individual actions, which is neither an effective means by which to accomplish justice nor an economical use of the Court's time and resources. Further, given the expense of litigation and the small size of numerous individual claims, many members of the class likely could not afford to

pursue relief absent class treatment.  Given these facts, Plaintiff contends that a class action is superior to other available methods of settling this case.  *See* 2 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 901.19 at 9-97 ("[T]he superiority requirement is most likely to be met in the paradigmatic case for which the class action device was developed: a cases in which a large number of claimants each suffer damages in a small individual amount.  In such cases, the class action is not only a superior device, but the only device by which all such claims may be adjudicated.").  Here, class treatment will create uniform resolution of the issues, and achieve judicial economy, convenience and fairness to all parties.  Accordingly, Plaintiff respectfully requests that the Court certify the Class pursuant to Rule 23 to effectuate the Settlement.

## III.   The Class Satisfies Section 16(b) of the FLSA

Plaintiff contends that this case is also appropriate for certification under Section 216(b) of the FLSA, 29 U.S.C. § 216(b).  Under the FLSA, an action may be maintained by an employee or employees on behalf of others who are "similarly situated." 29 U.S.C. § 216(b).  Courts follow a two-phased approach for determining whether an FLSA action meets the "similarly situated" standard. *See, e.g.*, *Lynch v. United Services Automobile Assoc.*, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007) (quoting 29 U.S.C. § 216(b)).  In the initial, "conditional" certification phase, the "similarly situated" standard is more permissive than Rule 23 and requires only that the named plaintiffs make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Contrera v. Langer*, 278 F. Supp. 3d 702 (S.D.N.Y. 2017) (citations omitted).

Here, Plaintiff contends that he and Class Members are similarly situated for purposes of conditional certification of a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  Plaintiff and Class Members all worked at Defendants' garages in New York City and claim that employees were not paid proper wages due to time. **[(ii) and (iii) are not FLSA claims]**

Accordingly, Plaintiff contends, and Defendants do not dispute, for purposes of settlement only, that conditional certification under 29 U.S.C. § 216(b) is appropriate.

**IV.**     **Plaintiff's Counsel Should Be Appointed as Class Counsel**

The lawyer representing Plaintiff, C.K. Lee of Lee Litigation Group PLLC, should be appointed as Class Counsel. Federal Rule of Civil Procedure 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

Plaintiff's Counsel meets all of these criteria. As set forth in the accompanying Declaration of C.K. Lee, Plaintiff's Counsel has done substantial work identifying, investigating, prosecuting, and settling Plaintiff's and potential Class Members' claims. Plaintiff's Counsel is familiar with Defendants' wage-hour policies and practices and uniquely positioned to assess the risks in this case. Additionally, Plaintiff's Counsel has substantial experience prosecuting and settling class actions, including wage and hour class actions, and is well-versed in wage and hour and class action law and well-qualified to represent the interests of the class. Accordingly, courts have repeatedly found Plaintiff's Counsel to be adequate class counsel in similar class actions.

## V.     <u>The Proposed Class Notice Is Appropriate</u>

### A.     <u>The Proposed Class Notice Satisfies Due Process</u>

The content of the proposed Notice of Proposed Class Action Settlement, attached as **Exhibit B** to Lee Declaration, fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> (i)    the nature of the action;
>
> (ii)   the definition of the class certified;
>
> (iii)  the class claims, issues, or defenses;
>
> (iv)  that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)   that the court will exclude from the class any member who requests exclusion;
>
> (vi)  the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Class Notice here satisfies each of these requirements.  Additionally, it describes the terms of the Settlement, informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Accordingly, the detailed information in the proposed Class Notice is more than adequate to put Class Members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).   Courts have approved class notices even when they provided only general information about the settlement terms. *See Charron*, 874 F. Supp. 2d at 191 (class notice need only "describe the terms of the settlement generally").  The proposed Class Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

**B.**     **The Notice Plan and Release Are Appropriate**

The Settlement Agreement provides that notice will be mailed to the last known address of each Class Member within thirty (30) days of entry of this Court's Order granting preliminary approval. The Claims Administrator will take reasonable steps to obtain the correct address of any Class Member whose notice is returned as undeliverable and, where correct addresses are obtained, will attempt re-mailing to those Class Members. Class Members can also submit change of address forms to notify the Claims Administrator of any upcoming address changes ("Change of Address Form," attached as **Exhibit C** to Lee Declaration). The proposed Class Notice contains information about how to exclude oneself and/or object to the settlement. Class Members will have forty-five (45) days from the date of mailing to submit opt-out requests or object to the settlement.

Likewise, the Court should preliminarily approve the releases of claims in the Agreement. Those releases were bargained for at arms-length and are part of the compromise vigorously negotiated and consummated in exchange for the Settlement Fund. The language of the releases is fair and effectuates the release of claims asserted in the litigation or that arise out of or relate to the facts alleged therein.

**VI.**     **Approval of the FLSA Settlement is Appropriate Under Federal Law**

Plaintiff also requests that the Court approve the settlement of his FLSA claims. He has brought his FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984),

*abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. During the litigation, counsel highly experienced in wage and hour law represented Plaintiff and Defendants.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court enter the Proposed Order and: (1) grant preliminary approval of the Settlement Agreement, (2) conditionally certify the settlement class under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), (3) approve the proposed Class Notice, (4) approve Plaintiff's proposed schedule for final settlement approval and set a date for the fairness hearing and related dates, (5) appoint Plaintiff's Counsel as Class Counsel, and (6) appoint Arden Claims Service as the claims administrator.

Dated: New York, New York                    Respectfully submitted,

    January 21, 2021                         LEE LITIGATION GROUP, PLLC

                                   By:     */s/ C.K. Lee*
                                           C.K. Lee, Esq. (CL 4086)
                                           148 West 24th Street, 8th Floor
                                           New York, NY 10011
                                           Tel: (212) 465-1188
                                           Fax: (212) 465-1181
                                           *Attorneys for Plaintiff, FLSA Collective*
                                           *Plaintiffs and the Class*