UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS MARTIN DE LA CRUZ,<br><br>       Plaintiff,<br><br>    -against-<br><br>MANHATTAN PARKING GROUP LLC, et al.,<br><br>       Defendants. | 20-CV-977 (JPO) (BCM)<br><br>**ORDER** |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: \_\_7/12/21\_\_

**BARBARA MOSES, United States Magistrate Judge.**

The Court will hold a conference concerning the pending motion for preliminary settlement approval (Dkt. No. 61) on **July 22, 2021, at 11:00 a.m., in Courtroom 20A** of the Daniel Patrick Moynihan United States Courthouse. In advance of the conference, and no later than **July 19, 2021**, the parties shall file a joint letter addressing the following topics, to be further discussed at the conference:

1. What estimated percentage of the proposed class does not speak English fluently? What languages do they speak? Is there a plan to translate the proposed Notice and Opt-Out Form (Dkt. No. 63-2) into Spanish, Chinese, or other languages?

2. Under ¶ 2.7(A) of the Settlement Agreement (Dkt. No. 63-1) and ¶ 7 of the Notice, a Class Member who chooses to opt out of the settlement must mail a document that states that he or she is "opting out" of the settlement. The proposed Opt-Out Form, however, does not contain this language. Instead, it reads, "I DO NOT WANT TO JOIN THE LAWSUIT . . ." The Settlement Agreement, Notice, and Opt-Out Form should be consistent, and should use language indicating that the Class Member is actively opting out or excluding him or herself from the Class.

3. On page 2 of the proposed Order (Dkt. No. 61-1), the Court is asked to "conditionally certify" both an opt-out class under Fed. R. Civ. P. Rule 23(b)(3) and "a co-extensive

collective action under Section 2016(b) of the Fair Labor Standards Act [FLSA]." *See also id*. at 4.

   a. The Court could not certify (preliminarily or otherwise) a "co-extensive collective action" because the proposed Rule 23 Class dates back to February 5, 2014, whereas the statute of limitations applicable to FLSA claims is, at most, three years.

   b. The Court need not "certify" any FLSA collective at all. *See, e.g.*, *Myers v. Hertz Corp*., 624 F.3d 537, 555 n.10 (2d Cir. 2010) ("[W]hile courts speak of 'certifying' a FLSA collective action, it is important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members."). In similar circumstances, combined FLSA/NYLL settlements have been preliminarily approved without any preliminary certification of an FLSA collective. *See, e.g.*, Order, *Tavera v. 18 Greenwich Avenue LLC*, No. 19-CV-8258 (SBA), ECF No. 40 (S.D.N.Y. March 10, 2020), ¶ 6 ("For settlement purposes only, the Court conditionally approves the sending of notice under the Fair Labor Standards Act, as amended ('FLSA'), to members of the Settlement Class.").

4. Under ¶¶ 1.13 and 3.1(A) of the Settlement Agreement, and as described on page 2 of the Notice, the *maximum* amount of the Gross Settlement Fund is $1.2 million. However, ¶ 1.5 requires that the "Settlement Amount" (an otherwise undefined term) be "increased, proportionate to the gross per person settlement amount under this Agreement," if the "total number of Class Members exceeds 1,650 individuals."

a. When will the determination as to the need for a proportionate increase be made, and will that determination be reported to the Court?

b. What are the mechanics of the proportionate increase contemplated by ¶ 1.5?

5. Under ¶ 3.5(A) of the Settlement Agreement, the Settlement Administrator may deduct from the Gross Settlement Amount (in addition to Court-approved awards for service, attorneys' fees and expenses, and settlement administration) "any other costs or expenses relating to the settlement (including employer-side payroll taxes such as FICA)," in order to determine the Net Settlement Amount. Aside from employer-side payroll taxes, what "other costs or expenses" may be deducted in determining the Net Settlement Amount? Who or what will receive those funds?

6. Under ¶¶ 1.2, 1.24, 2.10, 3.1(C) and (D), and 3.5(B) of the Settlement Agreement, the Net Settlement Amount will be allocated among all Class Members for purposes of determining the size of each Class Member's Settlement Check. However, only Authorized Claimants, defined as Class Members who execute and return a "complete and valid tax form . . . as determined by the Administrator," will receive Settlement Checks, with the balance of the Net Settlement Fund reverting to Defendants.

a. Why must Class Members execute and return a new tax form, given that all of them are (or were) Defendants' employees?

b. What will the tax form look like? No form is attached to the settlement materials.

c. When and how will the tax form be sent to Class Members? How much time will they have to return it? Will it advise them, either generally or specifically, how much money they can expect to receive if they execute and return it?

d. What estimated percentage of the proposed Class will likely be unable or unwilling to return a complete and valid tax form, due to immigration status, inertia, or other factors? What is the basis of that estimate? In particular, the Court would appreciate statistical data as to the percentage of a wage-and-hour class that typically returns tax forms of this type when returning such a form is a precondition to receiving a settlement check of the magnitude contemplated here. *See generally Oladapo v. Smart One Energy, LLC*, 2017 WL 5956907, at *13 n.12 (S.D.N.Y. Nov. 9, 2017) (noting that "response rates of 10% or less are common" in "claims made" settlements); *Sylvester v. CIGNA Corp.,* 369 F. Supp. 2d 34, 52 (D. Me. 2005) (same); "Claiming Rates," 4 Newberg on Class Actions § 12:17 (5th ed.) ("[M]ost class members will never step forward and file claims for relief in most class actions.") The Court recognizes that the proposed settlement in this case does not require a claim form *per se*, but is concerned that the proposed tax form may have a similarly depressing effect on the rate at which Class Members ultimately receive Settlement Checks.

e. Why should settlement funds initially allocated to Class Members who do not return complete and valid tax forms revert to Defendants? Particularly given that the Gross Settlement Fund represents only 4% of the Class Members' "total damages" as estimated by their counsel (*see* Pl. Mem. of Law, Dkt. No. 62, at 16), shouldn't the full Net Settlement Amount be allocated – either initially or through a second round of calculations after the tax forms are received – to the Authorized Claimants?

f.  If the funds initially allocated to Class Members who do not return complete and valid tax forms revert to Defendants, why should the proposed attorneys' fee award be calculated, as contemplated in ¶ 3.2(A) of the Settlement Agreement, as a percentage of the "gross settlement amount"?

g.  At a minimum, in accordance with the recommendation of the Federal Judicial Center,[1] shouldn't the parties report to the Court how many Class Members return complete and valid tax forms and how much is paid to the Authorized Claimants?

Dated: New York, New York
July 12, 2021

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[1] *See* Barbara J. Rothstein and Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges, 25 (Fed. Jud. Ctr.) (3d ed. 2010), at 25 (identifying the values of "[k]nowing the claims rate" and concluding that "to remedy the current lack of knowledge about claims rates and class member recoveries, judges should routinely order the parties to report such information to the court and place it in the public record").