# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CARLOS MARTIN DE LA CRUS, *on behalf of himself,*
*FLSA Collective Plaintiffs and the Class,*

                    Plaintiff,

        v.

MANHATTAN PARKING GROUP LLC
d/b/a MANHATTAN PARKING GROUP,
METROPOLITAN PARKING GROUP LLC,
UPTOWN PARKING CORP., RELIABLE
PARKING CORP., PROVO PARKING LLC,
POO PARKING CORP., MP GARDEN
OPERATING LLC, MP WEST 30 LLC, 1020
PARKING LLC, LAWRENCE LIPMAN,
GREG GONZALEZ, RAFAEL
MALDONADO and JOHN DOE ENTITIES
1-100,

                    Defendants.

---

Civil Action No.: 20-cv-977 (BCM)

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Defendants Manhattan Parking Group LLC d/b/a Manhattan Parking Group, Metropolitan Parking Group LLC, Uptown Parking Corp., Reliable Parking Corp., Provo Parking LLC, Poo Parking Corp., MP Garden Operating LLC, MP West 30 LLC, 1020 Parking LLC, Lawrence Lipman, Greg Gonzalez, Rafael Maldonado and John Doe Entities 1-100 (collectively, the "Defendants")[1], and Plaintiff Carlos Martin de la Cruz (the "Plaintiff"), individually and on behalf of a putative class he represents (the "Class") (Plaintiff and Defendants collectively, the "Parties").

## RECITALS AND BACKGROUND

WHEREAS, on February 5, 2020, a Rule 23 Class and FLSA Collective Action Complaint was filed by Plaintiff, against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Law ("NYLL") for Defendants' alleged failure to pay certain alleged unpaid wages and overtime premiums, liquidated damages, penalties, and for Defendants' alleged failure to provide proper wage and hour notices, and attorneys' fees and costs, to Plaintiff and the Class (the "Litigation");

---

[1] Defendants include all entities identified on Exhibit "A" attached hereto.

WHEREAS, on May 29, 2020, Defendants filed their Answer to the Complaint;

WHEREAS, on June 30, 2020, the Parties participated in an Initial Conference and pre-motion conference regarding Plaintiff's anticipated motion for conditional collective certification;

WHEREAS, on August 10, 2020, the Parties informed the Court that they intended to engage in private mediation;

WHEREAS, the Parties participated in a full-day mediation on December 1, 2020 with experienced mediator Martin F. Scheinman;

WHEREAS, the purpose of this Agreement is to settle fully and finally all claims asserted in the Litigation against the subject Defendants, including but not limited to, all Released FLSA Claims and Released Rule 23 Class Claims, between Plaintiff, the Class and Defendants;

WHEREAS, without acknowledging, admitting, or conceding that class or collective certification is warranted, without further acknowledging, admitting, or conceding any wrongdoing, liability or damages whatsoever, Defendants agreed to settle the Litigation, on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiff's Counsel analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Plaintiff and Class Members, including but not limited to exchanging a sampling of class documents in anticipation of mediation, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including but not limited to the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, might result in a recovery that is less favorable and that would not occur for several years, or the ability to collect on a judgment, Plaintiff's Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiff and Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1    Agreement.** "Agreement" means this Settlement Agreement and Release.

**1.2    Authorized Claimant.** A Class Member who does not opt out of the proposed settlement and submits a valid tax form to the Settlement Administrator within sixty (60) days of the date on which such forms are mailed to Class members by the Settlement Administrator, and thus becomes entitled to receive an Individual Settlement Allocation.

1.3 **Bar Date.** The date by which any Class Member who wishes to opt out of the settlement must postmark and submit an Opt-out Statement, which date shall be no later than forty-five (45) days after the initial mailing of Notice by the Settlement Administrator.

1.4 **Class Counsel.** "Class Counsel" or "Plaintiff's Counsel" shall mean C.K. Lee, Esq. of Lee Litigation Group, PLLC, 148 West 24th Street, 8th Floor, New York, NY 10011.

1.5 **Class List.** A list of all Class Members (not exceeding 1,650 individuals), identified by: (i) name; (ii) last known address and telephone number; and (iii) dates of employment;, to the extent such information exists on file with Defendants, that Defendants shall provide to the Settlement Administrator. If the total number of Class Members exceeds 1,650 individuals, the Settlement Amount will be increased, proportionate to the gross per person settlement amount under this Agreement.

1.6 **Class Members.** "Class Members" shall mean the Named Plaintiff and all hourly parking attendants, cashiers and other non-exempt workers, who were employed by Defendants at any time between February 5, 2014 and the date of preliminary approval, who do not opt out of the litigation. Class Members are treated as a class for the purposes of settlement only.

1.7 **Court.** "Court" means the United States District Court for the Southern District of New York.

1.8 **Days.** "Days" means business days if the specified number is less than 5, and calendar days if the specified number is 5 or greater.

1.9 **Defendants' Counsel.** "Defendants' Counsel" shall mean Jason A. Zoldessy, Esq. of Jackson Lewis P.C., 666 Third Avenue, 29th Floor, New York, NY 10017.

1.10 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.11 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement and Dismissal of the Litigation with prejudice.

1.12 **Final Effective Date.** Provided no appeal is timely filed, the "Final Effective Date" means the later of thirty (30) days after (1) the Court has entered a Final Approval Order approving this settlement (provided the Gross Settlement Fund has been fully funded by Defendants as provided in Section 3.1(b) of this Agreement); (2) the Court has entered the Final Approval Order as provided in Section 2.9 of this Agreement; and (3) the time to appeal from the Final Approval Order has expired and no notice of appeal has been filed or, if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (a) any appeal from the Final Approval Order has been finally dismissed; (b) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (c) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (d) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed or, if

granted, has resulted in affirmance of the Final Approval Order in a form substantially identical to the form of the Final Approval Order entered by the Court.

**1.13**  **Gross Settlement Fund.** "Gross Settlement Fund" refers to $1,200,000, the maximum amount Defendants have agreed to pay to the Settlement Administrator pursuant to this Agreement to fully resolve and satisfy any claim for attorneys' fees, expenses and costs approved by the Court, administration fees, any and all amounts to be paid to Authorized Claimants, any costs and expenses related to the settlement (including any employer-side payroll taxes, such as FICA), and any Court-approved service award.

**1.14**  **Individual Settlement Allocation.** "Individual Settlement Allocation" shall mean the amount payable to each Authorized Claimant pursuant to Section 3.5 of this Agreement.

**1.15**  **Named Plaintiff.** "Named Plaintiff" refers to Carlos Martin de la Cruz.

**1.16**  **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notices of Proposed Settlement of Class Action and Collective Action Lawsuit, including but not limited to notice of an opportunity to opt out and/or object to the proposed Settlement.

**1.17**  **Objector.** "Objector" means an individual who properly files an objection to this Agreement, in accordance with the terms and conditions set forth herein and pursuant to applicable law, and does not include any individual who opts-out of this Agreement.

**1.18**  **Opt-out Statement.** "Opt-out Statement" is a written, dated, and signed statement that an individual Class Member has decided to opt out and not be included in this Agreement.

**1.19**  **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement and (ii) directing the manner and timing of providing Notices to the Class Members.

**1.20**  **Released FLSA Claims.** "Released FLSA Claims" means all wage and hour claims that have been or could have been asserted under federal law by or on behalf of Authorized Claimants against the Released Parties, in the Litigation through the date of preliminary approval, including but not limited to all such claims under the Fair Labor Standards Act. The Parties expressly acknowledge that the Released FLSA Claims are intended to include and do include without limitation all such claims which Authorized Claimants do not know or suspect to exist in their favor against the Released Parties relating to the Released FLSA Claims and that this Agreement expressly contemplates the extinguishment of any such claims.

**1.21**  **Released Parties.** "Released Parties" means Defendants and any of their former and present officers, directors, owners, equity holders, members, parents, subsidiaries, employees, insurers, co-insurers, re-insurers, attorneys, accountants, general and limited partners, and/or assigns, each in their capacities as such.

**1.22**  **Released Rule 23 Class Claims.** "Released Rule 23 Class Claims" means all wage and hour claims that have been or could have been asserted under New York state law by or on behalf of Class Members against the Released Parties, excluding Class Members who opt out of the settlement, through the date of preliminary approval, including but not limited

to all such claims under the New York State Labor Law and its ancillary regulations. The Parties expressly acknowledge that the Released Rule 23 Class Claims are intended to include and do include without limitation all such claims which Class Members, excluding Class Members who opt out of the settlement, do not know or suspect to exist in their favor against the Released Parties relating to the Released Rule 23 Class Claims and that this Agreement expressly contemplates the extinguishment of any and all such claims.

1.23    **Settlement Administrator.** The "Settlement Administrator" or "Administrator" refers to Arden Claims Service, a third-party administrator who will mail the Notices, mail tax forms, administer the allocation, and distribute the payment of legal fees and expenses and that portion of the Gross Settlement Fund as determined by the number of Authorized Claimants in this matter. The Settlement Administrator's fees of $60,000 shall be paid out of the Gross Settlement Fund (half of which - $30,000 - shall be funded upon granting of preliminary approval of the class settlement).

1.24    **Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their Individual Settlement Allocation payments calculated in accordance with this Agreement.

2.     **INITIAL PROCEDURAL ISSUES**

2.1    **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

2.2    **Retention of the Settlement Administrator.** Within five (5) days after the filing of a Motion for Preliminary Approval, Class Counsel shall retain the Settlement Administrator.

2.3    **Responsibilities of Settlement Administrator.** The Settlement Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Class Notice; (ii) promptly and simultaneously copying counsel for all Parties on material correspondence and promptly and simultaneously notifying all counsel for the Parties of any material requests or communications made by any Party; (iii) promptly and simultaneously furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members which the Settlement Administrator receives; (iv) receiving and reviewing the Opt-out Statements submitted by Class Members; (v) keeping track of requests for exclusion including but not limited to maintaining the original mailing envelope in which the request was mailed; (vi) mailing tax forms to those Class Members that do not opt out and processing the return of such tax forms; (vii) calculating potential distribution amounts to Class Members; (viii) mailing the settlement checks to Authorized Claimants with the release language set forth in Paragraph 4.1(B) on the back of the check, and (ix) providing a final report detailing the results of the class mailings and participation to Defendants' counsel.

2.4    **Class Notice.** The Class Notice will inform Class Members about this Settlement and will also advise them of the opportunity to object to or opt out, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Preliminary Approval Order by the Court, the Settlement Administrator will mail to all Class Members, via First Class United States Mail, the Court-approved Notices of Proposed Settlement of Class Action Lawsuit and Fairness Hearing. The Settlement Administrator will take all reasonable steps to obtain

the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt a re-mailing to any member of the Settlement Class for whom it obtains a more recent address. The Settlement Administrator shall also mail a Class Notice to any Class Member who contacts the Settlement Administrator during the time period between the initial mailing of the Class Notice and the Bar Date and requests that their Class Notice be re-mailed. The Settlement Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5   Preliminary Approval Motion.**

(A)   On or before such date as set by the Court, the Parties shall move for Preliminary Approval of this Agreement for purposes of resolving this matter according to the terms of the Agreement. Defendants' Counsel will be given seven (7) days to provide approval of the terms, form, and content of all documents filed in connection with the Preliminary Approval Motion before they are filed with the Court.

(B)   The Preliminary Approval Motion also will seek the setting of a date for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date following the Bar Date, and payment of half of the administration fees ($30,000) to the Settlement Administrator.

(C)   If the Court denies Plaintiff's Motion for Preliminary Approval, the parties shall in good faith mutually work cooperatively to provide a supplement or amendment to the Court in due haste. If, despite good faith negotiations, the parties are unable to reach an accord on new/revised terms to the Agreement, the Parties may continue to litigate the Action as though this Agreement had never been executed. In that event, Defendants retain the right to contest whether this case should be maintained as a class or collective action, to contest the merits of the claims being asserted against them in the Litigation, and to assert their defenses. Plaintiff likewise retains the right to seek certification of a class action. Further, no party may use the fact that the Parties agreed to settle the case as evidence of Defendants' liability or the lack thereof. Lastly, if Preliminary Approval Motion is not approved and/or parties cannot reach new/revised terms to the Agreement, Defendants shall have no obligation to make any payments to any party, Class Member, Authorized Claimant, Class Counsel, Settlement Administrator or otherwise, and all monies paid by Defendants to the Settlement Administrator shall be returned to Defendants' Counsel.

**2.6   Notice to Class Members.** Within ten (10) days of the filing of the Preliminary Approval Order, Defendants' Counsel will provide the Settlement Administrator the Class List in electronic form.

**2.7   Class Member Opt-outs.**

(A)   Class Members who choose to opt out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, a written, signed

statement to the Settlement Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt out such as: "I opt out of the Settlement Agreement in the action styled *De La Cruz v. Manhattan Parking Group, LLC, et al.*, Case No. 20-cv-977."" ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked by the Bar Date.

(B)     Class Members may not opt out of the settlement after the Bar Date.

(C)     Within three (3) days of the Bar Date, Class Counsel will file with the Clerk of Court copies of any Opt-out Statements and send a final list of all Opt-out Statements to Defendants' Counsel.

(D)     Any Class Member who opts out of the settlement will not be considered an Authorized Claimant and will not receive any tax form, nor any Settlement Check.

(E)     Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the Settlement and the terms of this Agreement, will be bound by the Settlement in this case, and will have any Released Rule 23 Class Claims released with prejudice.

(F)     Within 30 days of the Bar Date, Defendants shall have the option to cancel the settlement if more than 33% of the Class Members opt-out of the settlement. Should Defendants elect such a cancellation, the Parties will revert to their respective positions prior to entering into negotiations for class settlement and the Litigation will proceed as if no settlement had been attempted. In that event, the class and collective certified for purposes of settlement shall be automatically decertified, and Defendants may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims asserted by Plaintiff in this action. In such case, the Parties will negotiate and submit for Court approval a revised case management schedule.

**2.8     Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Administrator via First-Class United States Mail post-marked by the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone numbers for the Class Member making the objection. The Settlement Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection. The Settlement Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the Bar Date.

(B)     An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the

Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time.

(C)   The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.9   Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)   After the Bar Date, in accordance with the schedule determined by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents for final approval of the settlement ("Final Approval"). The application for Final Approval may contain a report from the Settlement Administrator, an application for attorneys' fees, costs and expenses and supporting declaration/affidavits and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the settlement or any aspect related to this Agreement. The application shall also include a proposed Final Approval Order. Defendants' Counsel will be given seven (7) days to provide approval of the terms, form, and content of all documents filed, including the proposed Final Approval Order, before they are filed with the Court.

(B)   At the Fairness Hearing and Motion for Final Approval and Dismissal, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Settlement Administrator to distribute tax forms and Settlement Checks to Authorized Claimants, including service award, if any, to be paid to Named Plaintiff as described in this Agreement; (3) approve the payment of attorneys' fees and costs to Class Counsel; (4) approve the payment of fees to the Settlement Administrator; (5) order the dismissal with prejudice of all Released Rule 23 Class Claims of all Class Members who did not opt out and all Released FLSA claims for all Authorized Claimants (so long as their Settlement Checks are endorsed and deposited), (6) order entry of Final Approval Order in accordance with this Agreement; and (7) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.10   Mailing of Settlement Checks.** After receipt of the complete funding of the settlement fund, and provided the Final Effective Date has passed, the Administrator shall timely distribute the Settlement Checks comprising the Authorized Claimants' individual settlement amounts, Class Counsel's approved professional fees and costs, and any service award for Named Plaintiff, to the Authorized Claimants, Class Counsel, and Named Plaintiff, respectively. The Administrator shall also issue a check for the balance of the Administrator's fees. Class Members will only receive Settlement Checks after submitting a completed and valid tax form (thereby becoming "Authorized Claimants"), as determined by the Administrator.

**2.11    Effect of Failure to Grant Final Approval.**

(A)    For the purposes of this Section 2.11, the parties agree that failure to grant Final Approval shall be defined as the Court not approving the Gross Settlement Fund and/or the releases as set forth in the Agreement. In the event that any other term(s) or provision(s) of the Agreement are not approved, only such term(s) or provision(s) shall not be approved (without invalidating or rendering unapproved the remaining terms of the Agreement). In that event, the parties jointly agree to attempt to renegotiate any unapproved term or provision.

(B)    In the event the Court does not grant Final Approval, the Parties shall proceed as follows:

(1) The Litigation will resume unless: (a) the Parties jointly agree to seek reconsideration or appellate review of the decision denying entry of the Final Approval Order; or (b) the Parties jointly agree to attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(2) In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement.

(3) If the Parties do not jointly agree to seek reconsideration or appellate review of the decision denying entry of the Final Approval Order and/or a mutually agreeable settlement agreement cannot be reached by the parties, the Gross Settlement Fund shall be returned to Defendants' Counsel, less administration fees incurred up to that point in time, within five (5) days of a court order denying final approval of the settlement.

(4) If the Parties jointly agree to seek reconsideration and/or appellate review of the decision denying entry of Judgment and reconsideration and/or appellate review is denied, the Gross Settlement Fund shall be returned to Defendants' Counsel, less administration fees incurred up to that point in time, within five (5) days of a court order denying reconsideration and/or appellate review.

(5) If the Court does not grant Final Approval, the case will proceed as if no settlement has been attempted. In that event, Defendants retain the right to contest whether this case should be maintained as a class or collective action, to contest the merits of the claims being asserted against them in the Litigation, and to assert their defenses. Plaintiffs likewise retain the right to seek certification of a class action. Further, in the event the settlement is not approved, no party may use the fact that the Parties agreed to settle the case as evidence of Defendants' liability or the lack thereof.

(6) The Parties shall advise the Court of the termination of the settlement and shall apply to the Court to have a single approved notice mailed to Class Members advising them of the termination of the settlement. If approved by the Court, then the Settlement Administrator shall provide a Court-approved notice to Class Members and any Authorized Claimants that the Agreement did not receive Final Approval and that, as a result, no payments will be made to

Authorized Claimants under the Agreement.  Such notice shall be mailed by the Settlement Administrator via First Class United States Mail.

3.  **SETTLEMENT TERMS**

3.1  **Settlement Amount.**

(A)  Defendants agree to create a "Gross Settlement Fund" in an amount not to exceed $1,200,000, which shall fully resolve and satisfy any claims for (i) attorneys' fees, expenses and costs approved by the Court, (ii) all amounts to be paid to all Authorized Claimants for releasing claims as set forth herein, (iii) administration fees, (iv) any Court-approved service award, and (v) any other costs and expenses relating to the class settlement, including employer-side payroll taxes such as FICA.

(B)  Defendants shall fund the Gross Settlement Fund into the escrow account of the Settlement Administrator as follows: $100,000 of the Settlement Amount shall be funded not later than February 1, 2021, into the escrow account of Arden Claims Service. Thereafter, starting from the first business day of each month thereafter, Defendants shall pay five (5) monthly installments of $100,000 each, so that $600,000 of the Settlement Amount shall be pre-funded prior to the final approval of this class settlement. Upon 15 days after final Court approval of the settlement, the balance of the Settlement Amount necessary to cover the full  amount of the class settlement shall be funded to the Administrator by Defendants.  To the extent that Defendants are late with any payment, then the Administrator shall notify the parties of such default and Defendants will have 10 days to cure. If the default is not cured, then the Settlement Amount (up to $600,000 if prior to final approval, or up to the full Settlement Amount, if after final approval) shall be accelerated and be due and payable once the cure period has passed.

(C)  The Settlement Administrator shall return to Defendants' Counsel all funds in the escrow account in the event that: (a) the Court fails to grant preliminary approval of the Agreement, or (b) the Court fails to grant Final Approval of the settlement, or (c) in the event of approval of the Agreement, any funds in excess of the total amount necessary for payment to Authorized Claimants, approved attorneys' fees and costs, administration fees, costs and expenses relating to the class settlement (including employer-side payroll taxes such as FICA), and any Court-approved service award.

(D)  Payments to Authorized Claimants shall be automatic and shall not require submission of any claim forms.  However, Class Members must submit valid tax forms prior to receipt of their awards, the form of which will be agreed upon by the Settlement Administrator.  Authorized Claimants will have one hundred twenty (120) days from the date of mailing to endorse and cash their Settlement Checks (the "Acceptance Period").  Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.

(E)  Any uncashed Settlement Checks or checks for a service award not cashed or deposited within one hundred twenty (120) days of the mailing date shall be cancelled.  For purposes of this provision, the mailing date shall be deemed to be

the date posted on the Settlement Checks. Within thirty (30) days of the date on which such checks are cancelled, all funds remaining in the escrow account set up by the Settlement Administrator to hold the Gross Settlement Fund shall be returned to Defendants' Counsel.

**3.2   Settlement Amounts Payable as Attorneys' Fees, Expenses and Costs.**

(A)   At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of 1/3 of the gross settlement amount ($400,000) plus additional reimbursement for costs and expenses up to $10,000, to be paid out of the Gross Settlement Fund. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court. After payment of the approved attorneys' fees award and costs, Defendants shall have no additional liability for Class Counsel's attorneys' fees, expenses and costs.

(B)   The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

(C)   Any reduction in attorneys' fees and expenses shall automatically be applied to the Net Settlement Amount.

**3.3   Named Plaintiff's Service Award.**

(A)   In return for services rendered to the Class Members, and in exchange for his global release of all claims, at the Fairness Hearing, Named Plaintiff Carlos Martin de la Cruz will apply to the Court to receive $15,000 as a service award (the "Service Award"). Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B)   The application for Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

(C)   Any reduction in Service Award shall automatically be applied to the Net Settlement Amount.

**3.4   Administration Fees.**

(A)   In return for services rendered to the Class Members, the Settlement Administrator will be paid administration fees of $60,000, which fees shall be paid out of the Settlement Amount. Half of the Administration Fees ($30,000) will be paid upon

preliminary approval of the settlement, and the balance will be paid following final approval of the settlement.

(B)     The application for administration fees is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.   The outcome of the Court's ruling on the application for administration fees will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

(C)     Any reduction in Administration Fees shall be automatically applied to the Net Settlement Amount.

**3.5     Net Settlement Amount and Allocation to Class Members.**

(A)     After deduction of all court-approved Service Award, attorneys' fees, expenses and costs, administration fees, and any other costs or expenses relating to the settlement (including employer-side payroll taxes such as FICA) from the Gross Settlement Fund (the "Net Settlement Amount"), Individual Settlement Allocations will be computed based on the number of weeks worked by Class Members during the Class Period. The Settlement Allocations shall be made in accordance with the dates of employment and individual weeks worked as set forth in the confidential document(s) provided by Defendants' Counsel.

(B)     A Class Member's proportionate share of the Net Settlement Amount will be determined by the Settlement Administrator pursuant to the following formula:

(1) Each Class member shall be assigned one point for each week worked for Defendants between February 5, 2014 and the date of preliminary approval.

(2) To calculate each Individual Settlement Allocation, the Administrator shall: (a) Add all points for all Class Members, including but not limited to Authorized Claimants, together to obtain the "Total Denominator." (b) Divide the number of points by the Total Denominator and apply the fraction to the Net Settlement Amount to calculate the Individual Settlement Allocation. (c) All amounts beyond the total of the Individual Settlement Allocation payments to Authorized Claimants shall remain in the Administrator's escrow account referenced in Section 3.1 and be handled accordingly.

**3.6     Tax Characterization.**

(A)     Of each Individual Settlement Allocation payment made to Authorized Claimants, 50% of such amount shall be designated as wages and 50% shall be designated as non-wage damages and reported as 1099 earnings. When making payments to Authorized Claimants, the Administrator shall withhold the Authorized Claimant's share of all required federal, state, and local tax and other payroll withholdings from the 50% of the Individual Settlement Payment designated as wages, and report and pay over such amounts to the appropriate taxing authority. The Settlement Administrator shall provide Defendants with reports of all calculations of payments

to Authorized Claimants of wage payments and withholdings therefrom, and of non-wage payments.

(B)     The Administrator shall issue IRS Forms W-2 in the amount of payments to Authorized Claimants designated as wages, and IRS Forms 1099 for the balance of such payments, as well as any Court-approved Service Award to the Named Plaintiff. The Administrator shall also issue an IRS Form 1099 to plaintiff's counsel for the full amount of legal fees and costs approved by the court. Copies of all Forms W-2 and 1099 issued by the Administrator shall be forwarded to Defendants.

## 4.      RELEASE

### 4.1    Release of Claims.

(A)     By operation of the entry of the Final Approval Order, each individual Class Member who does not timely opt out pursuant to this Agreement forever and fully releases Released Parties from Released Rule 23 Class Claims.

(B)     By operation of the entry of the Final Approval Order, each individual Authorized Claimant who endorses and deposits their Settlement Check forever and fully releases Released Parties from all Released FLSA Claims. The back of each check shall bear the following legend:

"By my endorsement of this check, I opt into the lawsuit S.D.N.Y. 20-cv-00977, for settlement purposes only, and release all of my claims as described in the class settlement agreement."

(C)     Except as otherwise provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Class Counsel and Plaintiff, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that the Class Member may have against Released Parties for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

(D)     Subject to applicable law, the Parties agree that this Agreement will release any further attempt, by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind by each and all Class Members including but not limited to participation to any extent in any class or collective action, to obtain a recovery against the Released Parties based on each and all Released FLSA Claims and Released Rule 23 Class Claims, including but not limited to the allegations in the Litigation.

(E)     Except as otherwise provided in this Agreement and subject to applicable law, Class Members agree that, with respect to the Released FLSA Claims and Released Rule 23 Class Claims, they will not affirmatively join, opt in to, or participate as a party

plaintiff in any claim under the FLSA or state or local wage and hour law against the Released Parties, and that they will elect to opt out of any action under the FLSA or state or local wage and hour law against the Released Parties of which they are involuntarily made members or participants either at the time they receive notice of the right to opt out or such time as this Covenant Not to Sue is brought to their attention. Moreover, Authorized Claimants agree that they may not reinstate the Litigation.

(F)    In addition to the waiver and release contained above, and in consideration for the Service Award received under Section 3.3 herein, Named Plaintiff, his respective heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which he may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act; the Family and Medical Leave Act; the New York City Human Rights Law; the New York State Human Rights Law; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of Plaintiff's execution of this Agreement.

4.2    **Denial of Liability.**  Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, nor as an admission that a class or collective action class should be certified for any purpose other than settlement purposes.

## 5.    INTERPRETATION AND ENFORCEMENT

5.1    **Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees

to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2    **No Assignment.** Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3    **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4    **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5    **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6    **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

5.8    **Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9    **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10   **Binding Arbitration.** The Parties agree to refer any conflicts arising from this Agreement to Martin F. Scheinman for mediation and, if unsuccessful, for binding arbitration.

5.11   **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict

performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12**  **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its full execution and approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13**  **Binding Authority of Counsel.**  Class Counsel hereby represent that they are fully authorized to bind the parties they represent to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

**5.14**  **Signatures.**  This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.15**  **Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**5.16**  **Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.17**  **CAFA Notice.**  Defendants shall be responsible for timely filing the required notices to the relevant state attorneys general as required under the Class Action Fairness Act, as amended.

[REST OF PAGE LEFT INTENTIONALLY BLANK]

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUM AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFF, ON BEHALF OF HIMSELF AND OTHER CLASS MEMBERS, FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HIS ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.

WE AGREE TO THESE TERMS,

On behalf of the Named Plaintiff, Class Members and Class Counsel:

By: _____

C.K. Lee, Esq.
Lee Litigation Group, PLLC
148 West 24th Street, 8th Floor
New York, New York 10011

Dated: _Dec 30, 2020_____

On behalf of all Defendants:

By: _____, President

Lawrence Lipman

Dated: ____1 | 4 | 2021_____

4829-0273-8900, v. 1

- 17 -

EXHIBIT "A"



**Manhattan Parking Group:**
**List of Locations**

| MANHATTAN | BUILDING ADDRESS |
| --- | --- |
| Manhattan Enterprises Inc. | 575 Madison Avenue |
| Manhattan Parking West 45 Street Corp. | 120 West 45th Street |
| 72nd Street LLC | 517 East 71st Street |
| MP 44 LLC | 322 West 44th Street |
| MP 99 LLC | 1599 Lexington Avenue |
| MP West 29 LLC | 529 West 29th Street |
| Manhattan Parking East 79th Street Corp. | 239 East 79th Street |
| Manhattan Garage Equities | 923 Fifth Avenue |
| Kids Parking Corp. | 105 Duane Street |
| Manhattan Parking Gramercy Corp. | 32 Gramercy Park South |
| Manhattan Parking Gold Corp. | 220 East 54th Street |
| Sky Parking Corp. (TriBeca Abbey) | 121 Reade Street |
| 80th Street Parking Corp. | 525 East 80th Street |
| East 79th Street Parking LLC | 505 East 79th Street |
| Metropolitan Hospital Center | 1918 First Avenue |
| Harlem Hospital | 506 Lenox Avenue |
| Worthy Parking LLC (The Westport) | 500 West 55th Street |
| Manhattan Parking 110 LLC | 543 West 110th Street |
| MP 97 LLC (One Carnegie Hill) | 215 East 97th Street |
| MP Uptown LLC 1 (The Heritage) | 1295 Fifth Avenue |
| MP Manhattan Plaza LLC | 401-471 West 42nd Street |
| MP Uptown LLC 2 (Riverside Park) | 3333 Broadway |
| MP Uptown LLC 3 (Rivercrossing) | 440 East 102nd Street |
| MP Cosmo LLC | 145 East 48th Street |
| MP 53 LLC (The Veneto) | 250 East 53rd Street |
| MP 17 LLC (The Caledonia) | 450 West 17th Street |
| MP West 25 LLC | 25-39 West 25th Street |
| MP West 12 LLC (Superior Ink) | 400 West 12th Street |
| MP 325 LLC (Tribeca Green) | 325 North End Avenue |
| MP 400 LLC (Tribeca Park) | 400 Chambers Street |
| MP 93 LLC (Plymouth Tower) | 340 East 93rd Street |
| MP 41 LLC (MiMA) | 475 West 41st Street |
| MP 56 LLC | 201 East 56th Street |
| MP 66 LLC (The Chatham) | 181 East 65th Street |
| MP 102 LLC (1214 Fifth Ave) | 10 East 102nd Street |
| MP 144 LLC | 300 West 145th Street |
| MP West 97 LLC | 120 West 97th Street |
| MP West 20 LLC (Westminster) | 180 West 20th Street |
| MP West 30 LLC (Abington House) | 500 West 30th Street |
| MP Watts LLC (456 Washington) | 456 Washington Street |
| MP Hudson LLC (10 Hudson Yards) | 545 West 30th Street |
| MP 126 LLC | 162 East 126th Street |
| MP 30 Yards LLC (One Hudson Yards) | 530 West 30th Street |



## Manhattan Parking Group:
## List of Locations

| | |
|---|---|
| MP West 58 LLC (One Columbus) | 415 West 58th Street |
| MP 425 East LLC | 425 East 79th Street |
| MP New Garden Garage LLC (Meyers Parking) | 218 West 31st Street |
| MP Lincoln Garage LLC (Meyers Parking) | 323-345 West 34th Street |
| MP Times Square Garage LLC (Meyers Parking) | 146 West 44th Street |
| MP Post Office Garage LLC (Meyers Parking) | 34 West 31st Street |
| MP Gotham Garage LLC (Meyers Parking) | 9 West 35th Street |
| MP Beth Parking LLC (The Strathmore) | 401 East 83rd Street |
| MP West 52 LLC (888 Eighth Avenue) | 265 West 52nd Street |
| MP Battery 70 LLC (The Visionaire) | 70 Little West Street |
| MP MAD 106 LLC | 1568 Madison Avenue |
| MP 34 Tribeca LLC (Truffles Tribeca) | 34 Desbrosses Street |
| MP East 26 LLC | 314 East 26th Street |
| MP East 28 LLC | 351 East 28th Street |
| MP East 29 LLC | 333 East 29th Street |
| MP Columbus Parking LLC (Time Warner Center) | 336 West 58th Street/18 West 60th Street |
| MP West 54 LLC | 511 West 54th Street |
| MP Alyn Garage LLC (Meyers Parking) | 152 East 87th Street |
| MP South Cove LLC (Riverwatch) | 70 Battery Place |
| MP Lincoln Square Parking LLC (The Dorchester) | 143 West 68th Street |
| MP Battery Gateway LLC (Gateway Plaza) | 345 South End Avenue |
| MP East 101 LLC | 1955 First Avenue |
| MP East 9 LLC (The St. Mark) | 115 E 9th Street |
| MP 445 Lafayette LLC (Astor Place) | 445 Lafayette Street |
| MP 34 Jav LLC | 633 West 33rd Street |
| MP 200 NE LLC (Liberty Luxe/Liberty Green) | 200 North End Avenue |

| BRONX | BUILDING ADDRESS |
|---|---|
| Valentine Parking LLC | 250 East 187th Street |
| Bronx Lebanon Hospital: Reliable Parking Corp. | 585 East 169th Street |
| Bronx Lebanon Hospital: Poo Parking | 1752 Morris Avenue |
| Lincoln Hospital | 234 East 149th Street |
| 1020 Parking LLC | 1020 Grand Concourse |
| Solid Parking LLC | 1780 Grand Concourse |
| MP Hub LLC  (The Hub) | 3000 Third Avenue |
| MP BTM LLC (Gateway Center at Bronx Terminal Market) | 22 East 151st Street |
| Gem Parking Corp. | 2433 Valentine Avenue |
| MP Pearl LLC | 2510 Westchester Avenue |
| MP River LLC | 1111 Gerard Avenue |
| MP Garden LLC (NYBG Parking Garage) | 401 Bedford Park Blvd |
| MP 1775 LLC | 1775 Grand Concourse |
| MP 2026 LLC | 2026 Westchester Avenue |
| MP 2020 LLC | 2020 Boston Road |
| MP Park Associates LLC | 810 River Avenue |



## Manhattan Parking Group:
### List of Locations

| | |
|---|---|
| MP Creston LLC (Creston Parkview) | 2519 Creston Avenue |
| Morris Avenue Associates LLC | 1505 Morris Avenue |
| Morris Avenue Associates, II LLC | 1507 Morris Avenue |
| MP 1509 LLC | 1509 Morris Avenue |
| Morris Avenue Associates LLC | 1515 Morris Avenue |
| Morris Avenue Partners LLC | 1551 Morris Avenue |
| MP 1650 Weeks LLC | 1650 Weeks Avenue |
| MP Fordham Parking LLC (Bronx DMV) | 696 E Fordham Rd |
| MP Brook Parking LLC (Triangle Hub Plaza) | 459 E 149th st |

| BROOKLYN | BUILDING ADDRESS |
|---|---|
| MP Boerum LLC | 235 State Street |
| MP 80 Dekalb Parking LLC | 545 Fifth Avenue, Suite 600 |
| Manhattan Parking Boro Corp. | 40 Clinton Street |
| Lardon 1350 LLC | 470 Hudson Avenue |
| Woodhull Hospital | 760 Broadway |
| MP Together LLC | 205 State Street |
| MP Jay LLC | 100 Jay Street |
| MP 475 LLC (475 Clermont) | 810 Fulton Street (475 Clermont Avenue) |
| 19 India Fee Owner LLC (The Greenpoint) | 21 India Street |
| MP Heights Parking LLC (Clover House) | 107 Columbia Heights |
| MP Armory LLC | 406 15th Street |
| MP Broadway 11 LLC | 11 Broadway |

| QUEENS | BUILDING ADDRESS |
|---|---|
| Reed Parking Corp. (The Park Manor) | 98-50 65th Road |
| Queens Hospital | 82-68 164th Street Parsons Boulevard |
| MP 65-09 LLC | 65-09 99th Street |
| MP 98-41 LLC | 65-36 99th Road |
| MP Sunnyside Up LLC | 50-25 Barnett Avenue |
| MP Hunter 50 LLC (Hunter's Point South Commons) | 1-50 50th Avenue |
| MP Flushing LLC (Skyview Center) | 129 Roosevelt Avenue |
| MP Flushing Drive LLC (Skyview Parc Towers) | 40-28 College Point Blvd |
| MP Flushing 41 LLC (One Flushing) | 133-45 41st Avenue |
| MP Flushing 7 LLC (The Grand at Skyview) | 40-22 College Point Blvd |
| MP Seagirt LLC (Wavecrest Gardens) | 20-57 Seagirt Boulevard |
| MP Apex LLC | 108-40 Horace Harding Expy |
| MP 2909 LLC | 29-09 29th Street |

| WESTCHESTER | BUILDING ADDRESS |
|---|---|
| MP 47 LLC | 47 Riverdale Avenue, Yonkers |
| MP 40 MV LLC | 40 East Sidney Avenue, Mount Vernon |
| MP Centre LLC | 27 Centre Avenue, New Rochelle |
| MP Gerard LLC | 70 Portman Place, New Rochelle |

## ADDENDUM TO SETTLEMENT AGREEMENT AND RELEASE

In accordance with Section 5.11 of the Settlement Agreement and Release dated January 4, 2021 ("Settlement Agreement"), the parties, Plaintiff Martin de la Cruz and Defendants, Manhattan Parking Group LLC d/b/a Manhattan Parking Group, Metropolitan Parking Group LLC, Uptown Parking Group, Reliable Parking Group, Provo Parking LLC, Poo Parking Corp., MP Garden Operating LLC, MP West 30 LLC, 1020 Parking LLC, Lawrence Lipman, Greg Gonzalez, Rafael Maldonado and John Doe Entities 1-100 [1], through their respective counsel, agree to amend the Settlement Agreement as follows:

1. Amendment to Paragraph 1.2 of Settlement Agreement

Paragraph 1.2 of the Settlement Agreement shall be deleted and replaced by the following:

**Authorized Claimant.  A Class Member who does not opt out of the proposed settlement and thus becomes entitled to receive an Individual Settlement Allocation.**

2. Amendment to Paragraph 1.23 of Settlement Agreement

Paragraph 1.23 of the Settlement Agreement shall be deleted and replaced by the following:

**Settlement Administrator.  The "Settlement Administrator" or "Administrator" refers to Arden Claims Service, a third party administrator who will mail the Notices, administer the allocation, and distribute the payment of legal fees and expenses and the Gross Settlement Fund.  The Settlement Administrator's fees of $55,000 shall be paid out of the Gross Settlement Fund (half of which - $27,500 - shall be funded upon granting of preliminary approval of the class settlement).**

3. Amendment to Paragraph 2.3 of Settlement Agreement

Paragraph 2.3 of the Settlement Agreement shall be deleted and replaced with the following:

**Responsibilities of the Settlement Administrator.  The Settlement Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Class Notice; (ii) promptly and simultaneously copying counsel for all parties on material correspondence and promptly and simultaneously notifying all counsel for the Parties of any material requests or communications made by any Party; (iii) promptly and simultaneously furnishing to counsel for the Parties copies of any requests**

---

[1] Defendants include all entities identified on Exhibit "A" to the Settlement Agreement

**for exclusion, objections or other written or electronic communications from Class Members which the Settlement Administrator receives; (iv) receiving and reviewing the Opt-out Statements submitted by Class Members; (v) keeping track of requests for exclusion including but not limited to maintaining the original mailing envelope in which the request was mailed; (vi) calculating potential distribution amounts to Class Members; (vii) mailing the settlement checks to Authorized Claimants with the release language set forth in Paragraph 4.1(B) on the back of the check, and (viii) providing a final report detailing the results of the class mailings and participation to counsel to the Parties.**

4.  Amendment to Paragraph 2.4 of Settlement Agreement

The first sentence of Paragraph 2.4 shall be revised as follows:

**Class Notice.  The Class Notice, <u>which will be sent in English together with a Spanish translation,</u> will inform Class Members about this Settlement and will also advise them of the opportunity to object or opt out, and/or appear at the Fairness Hearing.**

5.  Amendment to Paragraph 2.5(B) of Settlement Agreement

**The reference in Paragraph 2.5(B) of the half of the administration fees ("$30,000") shall be replaced with "$27,500."**

6. Amendment to Paragraph 2.9(B)(2) of Settlement Agreement

Paragraph 2.9(B)(2) of the Settlement Agreement shall be deleted and replaced with the following:

**Order the Settlement Administrator to distribute Settlement Checks to Authorized Claimants, including service award, if any, to be paid to Named Plaintiff as described in this Agreement**

7. Amendment to Paragraph 2.10 of Settlement Agreement

Paragraph 2.10 of the Settlement Agreement shall be deleted and replaced with the following:

**After receipt of the complete funding of the settlement fund, and provided the Final Effective Date has passed, the Administrator shall timely distribute the Settlement Checks comprising the Authorizes Claimants' individual settlement amounts, Class Counsel's approved professional fees and costs, and any service award for Named Plaintiff, to the Authorized Claimants, Class Counsel and the Named Plaintiff, respectively. The Administrator shall also issue a check for the balance of the Administrator's fees.**

8. Amendment to Paragraph 3.1 of the Settlement Agreement

Paragraph 3.1(C) of the Settlement Agreement shall be deleted and replaced with the following:

> **The Settlement Administrator shall return to Defendants' Counsel all funds in the escrow account in the event that: (a) the Court fails to grant preliminary approval of the Agreement, or (b) the Court fails to grant Final Approval of the settlement.**

Paragraph 3.1(D) of the Settlement Agreement shall be deleted and replaced with the following:

> **Payments to Authorized Claimants shall be automatic and shall not require submission of any claim forms.  Authorized Claimants will have one hundred eighty (180) days from the date of mailing to endorse and cash their Settlement Checks (the "Acceptance Period").  Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.**

Paragraph 3.1(E) of the Settlement Agreement shall be deleted and replaced with the following:

> **Any uncashed Settlement Checks or checks for a service award not cashed or deposited within one hundred eighty (180) days of the mailing date shall be cancelled.  For purposes of this provision, the mailing date shall be deemed to be the date posted on the Settlement Checks.  Within thirty (30) days of the date on which such checks are cancelled, all funds remaining in the escrow account set up by the Settlement Administrator to hold the Gross Settlement Fund shall be returned to Defendants' Counsel.**

9. Amendment to Paragraph 3.4(A) of the Settlement Agreement

Paragraph 3.4(A) of the Settlement Agreement shall be deleted and replaced with the following:

> **In return for services rendered to the Class Members, the Settlement Administrator will be paid administration fees of $55,000, which fees shall be paid out of the Settlement Amount.  Half of the Administration Fees ($27,500) will be paid upon preliminary approval of the settlement, and the balance will be paid following final approval of the settlement.**

10. General

(a) Any all references in the Settlement Agreement to the Court's preliminary approval of the Settlement Agreement are amended to refer to the Court's preliminary approval of the Settlement Agreement, as amended by the Addendum.

(b) This Addendum to the Settlement Agreement may be executed in counterparts and circulated electronically or by facsimile, and all counterparts, taken together, shall constitute one and the same instrument.

(c) All questions with respect to the construction of this Addendum to the Settlement Agreement, and the rights and liabilities of the parties hereto, shall be governed by the laws of the State of New York without application of New York's conflict of laws principles.

**WE AGREE TO THESE TERMS,**

**Counsel to the Plaintiff, FLSA Collective Plaintiffs and Class Members:**

By: _____

C.K. Lee, Esq.

Dated: _____Sept 15, 2021_____

**On behalf of all Defendants:**

By: Lawrence Lipman _____
Digitally signed by Lawrence Lipman
DN: cn=Lawrence Lipman, o, ou,
email=larry@mpgparking.com, c=US
Date: 2021.09.15 12:49:03 -04'00'

Lawrence Lipman

Dated: _____9/15/21_____

4839-5860-1723, v. 1