

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARLOS MARTIN DE LA CRUZ, et al.,

    Plaintiff,

-against-

MANHATTAN PARKING GROUP LLC, et al.,

    Defendants.

---

20-CV-977 (BCM)

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

**BARBARA MOSES, United States Magistrate Judge.**

    Plaintiff Carlos Martin de la Cruz, who brought this wage and hour action on behalf of himself and others similarly situated, now seeks judicial approval of a $1.2 million settlement that will benefit approximately 1600 parking attendants, cashiers, and other workers at parking garages throughout the New York City area. On March 16, 2022, plaintiff filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of the FLSA Settlement (the Motion for Final Approval) (Dkt. 93), a Motion for Approval of Service Award (Motion for Service Award) (Dkt. 96), and a Motion for Approval of Attorneys' Fees, Costs and Expenses, and Administration Fees (Motion for Attorneys' Fees and Administration Fees) (Dkt. 98), none of which were opposed. By separate order (Final Approval Order) (Dkt. 108), I have granted the Motion for Final Approval, granted the Motion for Service Award, and granted in part the Motion for Attorneys' Fees and Administration Fees, to the extent of approving the requested fees to be paid to the Settlement Administrator.[1] I now turn to the portion of the fee motion that seeks approval of $400,000 in attorneys' fees and $6,360.74 in expenses, to be paid to Class

---

[1] Except as otherwise specified, capitalized terms used herein have the meanings assigned to them in the parties' Settlement Agreement and Release (First Settlement Agreement) (Dkt. 71-1, at ECF pages 2-22), as modified by the Addendum to Settlement Agreement and Release (Addendum) (Dkt. 71-1, at ECF pages 23-26) (collectively with the First Settlement Agreement, the Settlement Agreement).

Counsel out of the Gross Settlement Fund. For the reasons that follow, the motion will be granted in part, and Class Counsel will be awarded $300,000 in attorneys' fees and $6,360.74 in expenses.

## I. BACKGROUND

Named Plaintiff de la Cruz filed this action on February 5, 2020, alleging violations of the Fair Labor Standards Act of 1938 (FLSA) and the New York Labor Law (NYLL). *See* Compl. (Dkt. 1) ¶ 1. Plaintiff sued twelve named entities and individuals, as well as "John Doe Entities 1-100," alleging that defendants own and operate over 100 parking facilities throughout the New York City area, and that, due to their "timekeeping and payroll practices," they failed to pay their parking attendants, car washers, cashiers, and other laborers for all of the hours that they worked, or all of the overtime compensation due to them. *Id.* ¶¶ 2, 39, 43. Plaintiff principally alleged that he and others similarly situated were not paid for the first hour of their scheduled shift if they clocked in more than ten minutes late; were not paid for any late work unless they worked an entire hour past the end of their scheduled shift; were docked 30 minutes each day for their break, but were nonetheless required to be "on call" during their entire shift; and were not paid spread-of-hours compensation when they worked more than ten hours in one day. *Id.* ¶¶ 38-42. As a result, plaintiff alleged, he and others similarly situated "routinely" worked five to ten hours per week for which they were not paid, *id.* ¶ 43, which not only deprived them of straight time pay for those hours but also deprived them of overtime pay in weeks when their total hours exceeded 40. *Id.* ¶ 44.

After defendants answered, the parties served written discovery requests and "conferred about the possibility of settlement." (Dkt. 49.) After defendants produced "a sampling of time and pay records for certain putative class members" (*id.*), which plaintiff's counsel reviewed and

analyzed, the parties engaged in settlement discussions, culminating in a formal mediation on December 1, 2020. *See* Declaration of C.K. Lee (Lee Decl.) (Dkt. 95) ¶¶ 7-8, 13.

### A.     The First Settlement Agreement

On January 4, 2021, the parties entered into the First Settlement Agreement, and on January 21, 2021, plaintiff sought preliminary approval of its terms. (Dkt. 61.) Under the First Settlement Agreement, defendants[2] obligated themselves to create a Gross Settlement Fund of $1,200,000 to settle the claims of up to 1,650 Class Members (to be increased proportionally if the total number of Class Members exceeded 1,650). First Sett. Ag. ¶¶ 1.5, 1.13, 3.1(A). After deducting any Court-approved service awards, attorneys' fees and expenses, and administration fees, the Net Settlement Amount would be allocated to Class Members in proportion to the amount of time that each of them worked for Defendants. *Id*. ¶ 3.5(A)-(B). However, in order to become an Authorized Claimant (and receive a check), a Class Member would be required to execute and return a "complete and valid tax form . . . as determined by the [Settlement] Administrator." *Id*. ¶¶ 1.24, 2.10, 3.1(C)-(D). Settlement funds allocated to Class Members who failed to return tax forms would revert to defendants. *Id*. ¶ 3.1(C).

By Order dated July 12, 2021 (Dkt. 64), I asked the parties to address certain issues arising from the settlement terms initially submitted, including the terms summarized above. I was concerned that requiring Class Members to complete and return tax forms, as a predicate to receiving relatively modest settlement checks,[3] could significantly depress the number of Class

---

[2] Although only 12 defendants are named in the Complaint, the First Settlement Agreement also lists as "defendants," and is executed on behalf of, more than 100 additional entities, each associated with a single parking location in Manhattan, the Bronx, Brooklyn, Queens, or Westchester County.  *See* First Sett. Ag. Ex. A.

[3] Assuming 1,650 Class Members, and further assuming Court approval of all requested fees, the average payment allocated to each Class Member would be approximately $439.

Members who ultimately became Authorized Claimants, which in turn would result in a potentially significant portion of the Net Settlement Amount reverting to defendants. In response, the parties informed the Court that they intended to return to mediation and renegotiate. (Dkt. 67.) I then denied plaintiff's preliminary approval motion without prejudice to refiling after the mediation. (Dkt. 68.)

### B. The Addendum

On September 15, 2021, the parties entered into the Addendum, which – among other things – eliminated the requirement that Class Members submit new tax forms to become Authorized Claimants. Add. ¶ 1. Thus, after allocation, the entire Net Settlement Amount will be paid to the Class Members in proportion to the amount of time each of them worked for defendants. The only settlement funds that will revert to defendants are Settlement Checks not cashed or deposited within 180 days of mailing. *Id*. ¶ 8.

On September 17, 2021, plaintiff filed a renewed motion for preliminary approval of the settlement contemplated by the Revised Settlement Agreement (the Settlement). (Dkt. 69.) On November 16, 2022, I granted the motion and entered an order (the Preliminary Approval Order) (Dkt. 74) preliminarily approving the Settlement; provisionally certifying an opt-out Class pursuant to Fed. R. Civ. P. 23(e); appointing the Named Plaintiff as representative of Class; approving the sending of a Notice to Class Members pursuant to Fed. R. Civ. P. 23(e) and the FLSA, 29 U.S.C. § 216(b); appointing the Named Plaintiff's counsel, Lee Litigation Group, PLLC (LLG), as Class Counsel; and appointing Arden Claims Service (Arden) as Settlement Administrator. Prelim App. Order ¶¶ 1-9. The Class, as provisionally certified (and as now finally certified), includes all hourly parking attendants, cashiers, and other non-exempt workers, who were employed by Defendants at any time between February 5, 2014 and November 16, 2021. *Id*. ¶ 3; Final App. Order ¶ 3.

On December 7, 2021, Arden mailed the Notice (in English and Spanish) to a list of 1,608 Class Members. Lee Decl. ¶ 20; Declaration of Barry J. Peek (Peek Decl.) (Dkt. 100-2) ¶ 7. 309 Notices were returned as undeliverable, after which Arden conducted skip traces and was ultimately able to re-mail 247 of the 309, thereby notifying a total of 1,515 of the 1,608 Class Members. Lee Decl. ¶ 20; Peek Decl. ¶¶ 8-9. Eighteen Class Members opted out of the Settlement. Lee Decl. ¶ 21; Peek Decl. ¶ 10. No Class Member objected to the Settlement. Lee Decl. ¶ 21; Peek Decl. ¶ 11.

On March 16, 2022, plaintiff filed the Motion for Final Approval, Motion for Approval of Service Award, and Motion for Approval of Attorneys' Fees, and on May 2, 2022, the Court held a Fairness Hearing. As noted above, the only item left for determination is the amount of fees and expenses to be awarded to Class Counsel.

## II.   ANALYSIS

### A.   Legal Standards

The attorneys responsible for creating a class action settlement fund are "entitled to a reasonable fee – set by the court – to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In the Second Circuit, courts ordinarily use a "percentage-of-the-fund" method to determine a reasonable fee for class counsel. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). As a "cross-check" on the reasonableness of the percentage selected, courts appropriately apply the "lodestar" approach, "under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class," "multiplies that figure by an appropriate hourly rate," and then, in its discretion, applies a "multiplier" to the total if warranted. *Goldberger*, 209 F.3d at 47.

Regardless of which method is used, the reasonableness of the fee award is analyzed under the *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and

5

complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (citation omitted). When using the percentage-of-the-fund approach, courts apply these factors "in three steps." *Espinal v. Victor's Cafe 52nd St., Inc.*, 2019 WL 5425475, at *2 (S.D.N.Y. Oct. 23, 2019). First, "the Court determines a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance." *Id.* Second, "the Court considers the remaining *Goldberger* factors," including the risk to Class Counsel, the quality of representation, and other public policy concerns, "to determine the precise percentage of the settlement fund to award." *Id.* Third, "the Court applies the lodestar method as a cross-check, considering the amount of time reasonably spent by Class Counsel and the hourly rate charged." *Id.* In this case, the Count concludes that the $400,000 sought by Class Counsel is too high and that a fee award of $300,000, representing 25% of the Gross Settlement Fund, is more reasonable.

**B.     Step One: Fees in Similar Common-Fund Settlements**

The size of the settlement fund and complexity of the settlement are key to determining the proper attorney's fee award. All else being equal, courts generally award a smaller percentage of the fund for larger settlements, to avoid a windfall for plaintiffs' attorneys at the expense of the class members in larger cases. *See McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 385 (S.D.N.Y. 2017) ("A sliding scale approach – awarding a smaller percentage of the settlement as the amount of the settlement fund increases – is appropriate in order to avoid overcompensating plaintiffs' counsel to the detriment of the class members they represent."); *Johnson v. Brennan*, 2011 WL 4357376, at *18 (S.D.N.Y. Sept. 16, 2011) ("Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a 'windfall.'"); *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) (""[T]he

6

percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent.").

Here, Class Counsel argues that the proposed fee award – one-third of the Gross Settlement Fund – is within the range approved by courts in cases of similar size and complexity. *See* Pl. Fee Mem. (Dkt No. 99) at 2. The same law firm made the same argument in *Espinal,* but the court rejected it because counsel's assertion was "not supported by empirical data." 2019 WL 5425475, at *2.[4] To be sure, a number of courts have approved fee awards of one-third of the gross settlement in hybrid FLSA/NYLL cases that settle in seven figures. *See*, *e.g.*, *Solis v. OrthoNet LLC*, (VSB), 2021 WL 2678651, at *2 (S.D.N.Y. June 30, 2021) (collecting cases). The case at bar, however, settled before any collective or class certification motion was made. Consequently, "the complexity of hybrid cases was a factor only in drafting the settlement agreement and the notice to class members." *Espinal*, 2019 WL 5425475, at *3.

Moreover, empirical data drawn from class action settlements nationwide shows that in labor and employment cases, the mean fee award is between 27% and 28% of the gross settlement fund, while the median is between 25% and 29%. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 835 (2010); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action*

---

[4] *Espinal* – like this case – involved the settlement of a "hybrid" FLSA/NYLL case, which is "complex" because "'state wage and hour violations are brought as an opt out class action pursuant to Rule 23 in the same action as the FLSA opt in collective action.'" *Espinal*, 2019 WL 5425475, at *3 (quoting *Siler v. Landry's Seafood House-North Carolina, Inc.*, 2014 WL 2945796, at *9 (S.D.N.Y. June 30, 2014)). However, the gross settlement fund in *Espinal* was only $345,000, and the net settlement amount was to be distributed to 36 participating class members (who would receive an average of $2,792.24 apiece), and to a charitable *cy pres* designee, before a portion reverted to defendants. *Id*. at *1.

*Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 262 (2010)); *Espinal*, 2019 WL 5425475, at *2. Looking at class actions settlements within the Second Circuit, "the percentage of the fund awarded generally falls within a range of 15% to 33%." *Espinal*, 2019 WL 5425475, at *2; *see also Donoghue v. Morgan Stanley High Yield Fund*, 2012 WL 6097654, at *2 (S.D.N.Y. Dec. 7, 2012) ("In 'common fund' cases, the percentage-of-fund recovery typically falls within a 15% to one-third range."). On a nationwide basis, one study found that the mean fee percentage for settlements of $750,000 to $1.75 million was 28.7%, while the median was 30%. Fitzpatrick, *supra*, 7 J. Empirical Legal Stud. at 839; *see also* Theodore Eisenberg, *et al.*, Attorneys' Fees in *Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 938, 948 (2017) (median fee in cases with recoveries between $750,000 and $1.4 million was approximately 29% of the gross settlement).

In *Espinal*, as noted above, the court rejected the one-third fee proposed by LLG, describing it as an "unreasonably high percentage of the settlement fund," 2019 WL 5425475, at *3. At step one of the analysis, the *Espinal* court found that a "reasonable baseline percentage" for an FLSA/NYLL case that settled at an "early stage" was 25% of the gross settlement, *id*, and ultimately reduced the award further, to 21%, because the settlement was "reversionary," with "a very significant portion of the unclaimed funds reverting to the defendant." *Id*. at *4. *See also James v. China Grill Mgmt., Inc.*, 2019 WL 1915298, at *2-3 (S.D.N.Y. Apr. 30, 2019) (relying on the national data summarized above as a "starting point," and ultimately awarding a fee of $366,000, or 30% of the total settlement fund, in a hybrid FLSA/NYLL case); *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 593, 598 (S.D.N.Y. 2015) (rejecting request for one-third fee and instead awarding 20% of the $800,000 settlement fund in a "simple and straightforward action for violations of FLSA and NYLL" on behalf of delivery workers at the defendants' restaurants); *Long v. HSBC USA INC.*, 2016 WL 4764939, at *15 (S.D.N.Y. Sept. 13,

8

2016) (awarding a fee of $713,471.20 to LLG and its co-counsel, representing slightly over 10% of the $6,982,000 gross settlement in a "large" and "complex" FLSA/NYLL case in which 500 plaintiffs recovered approximately 68% of their claimed lost wages).

In this case – an FLSA/NYLL action involving a large number of parties but no other particular complexities – the Court concludes that 25% of the Gross Settlement Fund is a "reasonable baseline figure," *Espinal*, 2019 WL 5425475, at *3, with which to begin.

### C.   Step Two: Risk, Results, and Public Policy Considerations

Once the reasonable baseline fee is established, it can be either enhanced or decreased based on the risk of litigation, the quality of representation, and any remaining policy considerations. *Espinal*, 2019 WL 5425475, at *3 (citing *McGreevy*, 258 F. Supp. 3d at 386). In this case, those factors do not require any alteration of the 25% baseline fee.

Class Counsel argues that LLG took on significant risk by undertaking this case on a contingency basis. *See* Pl. Fee Mem. at 13. There is of course risk in any contingency engagement. *See, e.g., Espinal*, 2019 WL 5425475, at *3; *McGreevy*, 258 F. Supp. 3d at 386. However, "this arrangement is common in wage and hour cases and does not warrant an adjustment to the baseline fee." *China Grill Mgmt.*, 2019 WL 1915298, at *2; *see also Goldberger*, 209 F.3d at 54 (contingency risk "must be considered in setting a reasonable fee" but does "not always compel enhanced fees," particularly where enhancement would lead to overcompensation) (citations omitted). The remaining risk factors cited by Class Counsel – the "highly fact-specific" nature of plaintiffs' claims, the "voluminous paper discovery" produced by defendants, and the strong defenses available to them, *see* Pl. Fee Mem. at 13-16 – are neither unique to this case nor grounds for enhancing the baseline fee.

Class Counsel next argues that the quality of LLG's representation, particularly its "skill and experience," was "directly responsible for the favorable settlement" in this matter. Pl. Fee

9

Mem. at 16-17. LLG is indeed experienced and, for the most part, skillful in its management of FLSA and NYLL litigation. However, "the quality of representation is best measured by results," *Goldberger*, 209 F.3d at 55, and the results here are rather modest. The $1.2 million Gross Settlement Fund represents only 4% of the $26,494,00 in "total damages" that Class Counsel estimated, prior to the mediation, based on the records they reviewed, *see* Pl. Mem. in Supp. of Mtn. for Final Approval (Dkt. 94) at 19, and the "average claim payment," after all fees are deducted, is now estimated at only $423.15. Peek Decl. ¶ 13.[5]

To be sure, there are good reasons for the steep compromise. Plaintiffs' time-shaving claims were challenging because defendants' payroll records "did not demonstrate any time shaving on their face." Pl. Fee Mem. at 14. For several years, defendants paid the Class Members "above the minimum wage so spread-of-hours does not apply." *Id*. Moreover, defendants "did provide wage statements to their employees," *id*. at 15, such that plaintiffs' wage statement claims were "contingent on Plaintiff[s] prevailing on [their] other claims." *Id*. Under the circumstances, the 4% recovery that LLG obtained for its clients is fair and – as LLG points out – "puts money in the hands of workers who need it." *Id*. at 16. However, "there is no reason for the Court to conclude that this result is so exceptional as to warrant an increase in the baseline percentage." *China Grill Mgmt.*, 2019 WL 1915298, at *2 (declining to adjust baseline percentage where the $1.22 million settlement represented "16% of total estimated damages, exclusive of liquidated damages").

I note as well that the "quality of representation" faltered at least once during this case. Under the First Settlement Agreement, the Net Settlement Amount would have been allocated to all Class Members, but distributed only to those who executed and returned a "complete and valid

---

[5] That figure assumes a $400,000 attorney's fee award. Peek Decl. ¶ 12. Reducing the fee award to $300,000, but otherwise using the same methodology, yields an estimated average claim payment of $518.02.

tax form . . . as determined by the [Settlement] Administrator," First Sett. Ag. ¶¶ 1.24, 2.10, 3.1(C)-(D), with the remaining funds reverting to defendants. *Id*. ¶ 3.1(C). That structure would likely have further reduced the benefits of the Settlement to the Class as a whole while providing defendants with an after-the-fact reversionary windfall. *See Espinal*, 2019 WL 5425475, at *4 (noting that there are "significant public policy considerations against reversionary settlements," in part because "'it is well known that Rule 23 class members participate in the monetary recovery in small percentages if the submission of a claim form is required'") (quoting *McGreevy*, 258 F. Supp. 3d. at 388)).[6]

Finally, Class Counsel argues that its role as a "private attorney general" prosecuting wage and hour cases under the FLSA and NYLL justifies an enhanced fee award. *See* Pl. Fee Mem. at 19-20. It is true that "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation," *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). But there is no *particular* public policy concern, specific to this case, that differentiates it from the mine run of FLSA/NYLL cases, or indeed from other class actions in which plaintiffs' counsel acts as a "private attorney general." Moreover, fee awards "should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class." *McGreevy*, 258 F. Supp. 3d at 387. Thus, no deviation from the baseline fee is warranted, in this case, based on public policy considerations.

---

[6] The tax form contemplated by the First Settlement Agreement would not have been a "claim form" *per se*, but would likely have had a similar effect, particularly given the relatively small size of any one settlement check. *See* 4 *Newberg on Class Actions* § 12:17 (5th ed.) ("[M]ost class members will never step forward and file claims for relief in most class actions.").

### D. Step Three: Lodestar Cross-Check

A court performing a lodestar analysis first calculates counsel's lodestar "by multiplying the hours reasonably expended on the case by a reasonable hourly rate," *Johnson*, 2011 WL 4357376, at *20, then considers whether a multiplier is warranted in light of various factors (similar to those listed in *Goldberger*), including "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Id.* Recognizing that lawyers who take contingency cases earn nothing if there is no recovery, courts typically apply lodestar multipliers between two and six – *i.e.*, award attorneys' fees equal to two to six times the lodestar – in successful cases. *Id.* When using the lodestar as a cross-check, "the Court need not exhaustively scrutinize the hours documented by class counsel; instead, 'the reasonableness of the lodestar can be tested by the court's familiarity with the case.'" *Espinal*, 2019 WL 5425475, at *4 (quoting *Melito v. American Eagle Outfitters, Inc.*, 2017 WL 3995619, at *19 (S.D.N.Y. Sept. 11, 2017)).

According to the time records submitted by LLG, the firm logged approximately 241 hours litigating this case, at rates ranging from $800 per hour (for partners C.K. Lee and Anne Seelig) to $275 per hour (for the firm's paralegals), resulting in a lodestar of $150,987.50. Pl. Fee Mem. at 21; Lee Decl. ¶ 7 & Ex. A. The hours worked appear reasonable (except for the time spent renegotiating the settlement terms, and rewriting the preliminary approval motion, after the Court alerted counsel to the deficiencies in the First Settlement Agreement), but the rates applied to those hours by LLG are clearly unreasonable. *See Li v. Ichiro Sushi, Inc.*, 2022 WL 1137094, at *2 (S.D.N.Y. Apr. 16, 2022) ("In this district, experienced partners are commonly awarded between $300 and $400 per hour in FLSA cases," and "[a] rate of $100 to $150 for paralegal work is standard[.]"); *Perez v. Eons - Greek Food for Life, LLC*, 2020 WL 8768085, at *2-3 (S.D.N.Y.

Aug. 12, 2020) (noting that the court "is not aware of any cases in this district that have approved an $800 hourly rate in a FLSA case, even for an experienced attorney like Mr. [C.K.] Lee," and reducing his rate to $450 per hour for purpose of calculating LLG's lodestar). Consequently, for cross-check purposes, I reduce the firm's self-calculated lodestar by 40%, to $90,590.70. The $300,000 award thus implies a multiplier of approximately 3.31, which, although on the high side, is not so unreasonable as to require a further reduction in Class Counsel's fees. *See Espinal*, 2019 WL 5425475, at *5 (reducing LLG's "reported lodestar by 20%" and then awarding fees representing 1.14 times the reduced lodestar); *China Grill Mgmt.*, 2019 WL 1915298, at *3 (awarding fees representing "a lodestar multiplier of approximately 3.53," which is "slightly higher than what is typically awarded in FLSA cases"); *Long*, 2016 WL 4764939, at *13 (relying on the lodestar method in the first instance to award fees equal to 3.10 times counsel's lodestar, in part because of their efficiency in conducting informal discovery and negotiating a settlement "without the need to litigate" various phases of the case).

### E. Costs and Expenses

Class Counsel seeks costs and expenses in the amount of $6,360.74. Pl. Fee Mem. at 1. These expenses include "filing fees, investigation fees, mediation fees, translation fees, and travel expenses." Lee Decl. ¶ 8. Class Counsel is "entitled to reimbursement of reasonable litigation expenses from the settlement fund when the expenses are 'necessary and were directly related to the results achieved.'" *Espinal*, 2019 WL 5425475, at *5 (quoting *Siddiky v. Union Square Hospitality Group, LLC*, 2017 WL 2198158, at *12 (S.D.N.Y. 2017)). The Court finds these expenses reasonable.

### III. CONCLUSION

For the foregoing reasons, the Motion for Attorneys' Fees and Administration Fees is GRANTED IN PART, to the extent that Class Counsel is hereby awarded attorneys' fees of

$300,000 and reimbursement of expenses in the amount of $6,360.74, for a total of $306,360.74, to be paid by or on behalf of the defendants, from the Settlement Fund, according to the terms of the Settlement Agreement.

Dated: New York, New York
July 12, 2022

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**