

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS MARTIN DE LA CRUZ, et al.,

Plaintiff,

-against-

MANHATTAN PARKING GROUP LLC, et
al.,

Defendants.

20-CV-977 (BCM)

**MEMORANDUM AND ORDER
REGARDING RECONSIDERATION**

**BARBARA MOSES, United States Magistrate Judge.**

On July 12, 2022 the Court: (i) granted final approval of a $1.2 million settlement that,
when distributed, will benefit Class Representative Carlos Martin de la Cruz and approximately
1600 other parking attendants, cashiers, and other hourly workers at parking garages throughout
the New York City area who were allegedly underpaid in violation of the Fair Labor Standards
Act (FLSA) and the New York Labor Law (NYLL), *see* Order Granting Mtn. for Final Settlement
Approval, Granting Mtn. for Service Award, and Granting in Part Mtn. for Attorneys' Fees and
Admin. Fees (Final App. Order) (Dkt. 108); and (ii) granted in part the fee application of Class
Counsel, approving an award of $300,000 in fees, to be paid out of the Gross Settlement Fund. *See*
Op. and Order Granting in Part Plaintiff's Mtn. for Attorneys' Fees (Fee Op.) (Dkt. 109) at 13-14.[1]

On July 26, 2022, Class Counsel filed a motion (Dkt. 110) asking the Court to reconsider
the fee award and, upon reconsideration, to award "the full $400,000 in petitioned legal fees"

---

[1] Except as otherwise specified, capitalized terms used herein have the meanings assigned to them
in the parties' Settlement Agreement and Release (First Settlement Agreement) (Dkt. 71-1, at ECF
pages 2-22), as modified by the Addendum to Settlement Agreement and Release (Dkt. 71-1, at
ECF pages 23-26). The $300,000 in fees awarded to Class Counsel represents 25% of the Gross
Settlement Fund and approximately 26.7% of the Net Settlement Amount (after deduction of the
$15,000 service award to the Class Representative, the $55,000 fee payable to the Settlement
Administrator, and the $6,360.74 in reimbursable expenses incurred by counsel, none of which is
at issue here). *See* Final App. Order ¶¶ 14-15; Fee Op. at 13.

originally sought. Mem. of Law in Supp. of Plaintiff's Mtn. for Recon. (Recon. Mem.) (Dkt. 112) at 1.[2] Class Counsel argues: (1) that the Court erred, when discussing *Espinal v. Victor's Cafe 52nd St., Inc.*, 2019 WL 5425475 (S.D.N.Y. Oct. 23, 2019), in stating that Lee Litigation Group, LLC (LLG), Class Counsel herein, represented the class in that case as well, *see* Recon. Mem. at 2-3; (2) that the Court erred, at step one of the three-step *Goldberger* analysis,[3] by relying on *Espinal* and the empirical studies cited therein to conclude that 25% of the Gross Settlement Fund is a "reasonable baseline figure" for the fee award in this case, *see id*. at 3-8; (3) that the Court further erred, at step two of the analysis, by failing to appreciate that this case was "uniquely risky" because it was litigated under difficult circumstances during the COVID pandemic and because defendants had strong defenses, *see id*. at 8-15; and (4) that the Court erred again, at step three of

---

[2] Although the motion was filed on behalf of plaintiff de la Cruz, if granted it will benefit only Class Counsel, at the expense of the Class. The $300,000 fee award approved by the Court produces an estimated average claim payment of approximately $518 for each member of the Class. *See* Fee Op. at 10 n.5. If the award were increased to $400,000, as Class Counsel requests, the estimated average claim payment would drop to approximately $423. *Id.* at 10; *see also* Peek Decl. (Dkt. 100-2) ¶ 13. In recognition of that reality, this Memorandum and Order treats the motion, and the arguments made therein, as Class Counsel's.

[3] In *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), the Court of Appeals reiterated the six "traditional criteria" to be used in analyzing the reasonableness of a fee award requested by class counsel: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id*. at 50 (citation omitted). The district courts commonly apply those factors in three steps: "First, the [court] determines a baseline for a reasonable fee with reference to other common fund settlements of a similar size and complexity, taking into account the requested fee in relation to the settlement, the magnitude and complexity of the case and the policy consideration of using a sliding scale based on the amount of the settlement to avoid a windfall to class counsel. Second, the [court] considers the risk to Class Counsel, the quality of representation and other public policy concerns in order to make any necessary adjustments to the baseline fee. Third, the [court] applies the lodestar method as a cross check, taking into account the time and labor expended by Class Counsel." *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 385 (S.D.N.Y. 2017).

the analysis, by discounting LLG's stated hourly rates for purposes of performing the lodestar cross-check. *Id*. at 15-16.

The motion is unopposed.[4]

Class Counsel is correct that the Court mistakenly identified LLG as class counsel in *Espinal*. The *Espinal* plaintiffs were represented by Borrelli & Associates. 2019 WL 5425475, at *1. The Court regrets the error and has issued an amended Fee Opinion correcting it. In all other respects, however, the reconsideration motion will be denied.

## Standards

District courts are entrusted with "very broad discretion" in determining a reasonable attorneys' fee award as part of a common fund settlement, *Goldberger,* 209 F.3d at 57, and properly assess such fees "based on scrutiny of the unique circumstances of each case," with a "jealous regard" for the rights of the class members most interested in the fund. *Id*. at 53 (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 468, 469 (2d Cir. 1974) (abrogated on other grounds by *Goldberger*, 209 F.3d at 45)); *see also Long v. HSBC USA INC.*, 2016 WL 4764939, at *3 (S.D.N.Y. Sept. 13, 2016) (emphasizing breadth of discretion granted to district courts in awarding fees). The district court does not abuse its discretion "merely because the fee awarded is at odds with the . . . 'benchmark' embraced by counsel [or] because it deviates materially from the [percentages] usually awarded in similar cases." *Goldberger*, 209 F.3d at 53. A district court's fee decision "will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding." *Id*. at 47.

---

[4] Defendants agreed not to oppose Class Counsel's application for a fee of 1/3 of the Gross Settlement Amount, "including any appeal or request for reconsideration[.]" First Sett. Ag. ¶ 3.2(a). The Class Representative will receive a service award of $15,000, *see* Final App. Order ¶ 14, and thus has little incentive to oppose Class Counsel's motion.

Reconsideration, which is governed by Local Civil Rule 6.3, is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 613, 614 (S.D.N.Y. 2000)). Under the "strict" standards applicable to such a motion, *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked" and that "might reasonably be expected to alter the conclusion reached by the court." *Id.* It is the movant's burden to identify the information that was "before [the court] on the original motion" but was overlooked, and to demonstrate that it "might materially have influenced its earlier decision." *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (quoting *Anglo Am. Ins. Grp. v. CalFed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996)) (internal quotation marks omitted). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

The decision to grant or deny a motion for reconsideration, like the decision awarding attorneys' fees, "rests within the sound discretion of the district court," *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, at *1 (S.D.N.Y. Sept. 27, 2016) (quoting *Williams v. Rosenblatt Secs. Inc.*, 2016 WL 590232, at *4 (S.D.N.Y. Feb. 11, 2016)), and is reviewed "only for abuse of discretion." *Analytical Surveys*, 684 F.3d at 52.

## Analysis

In its original fee application, LLG argued that the proposed award of $400,000 (representing one-third of the Gross Settlement Amount or approximately 35.6% of the Net

Settlement Amount) is "within the range approved by courts in wage and hour class action cases," Pl. Fee Mem. (Dkt. 99) at 4, and cited a number of cases awarding one-third of the common fund in fees, *id.*, but did not reference any empirical studies or make any other effort to marshal objective evidence in support of its position that 33-1/3% is presumptively the "appropriate percentage to properly compensate Class Counsel" in an FLSA/NYLL settlement. Recon. Mem. at 3. It now argues that some of studies cited by this Court in the Fee Opinion are outdated or "distinguishable," *id.* at 5, and proposes instead that the Court rely on LLG's own in-house fee award statistics,[5] or place more weight on the most recent of the empirical analyses discussed in the Fee Opinion, which shows that "fee award percentages have been trending up." *Id.* at 7-8.[6]

This challenge fails. *First*, Rule 6.3 requires a showing that the Court "overlooked" matters that were put "before it on the original motion" and that "might materially have influenced" the decision on that motion. *Facebook*, 43 F. Supp. 3d at 373. Having put no empirical evidence before the Court on its original motion, Class Counsel is not now entitled to a second bite at the apple on the basis of newly-gathered data drawn from its own files.

---

[5] LLG asserts in its brief (which its principal swears is true, *see* Lee Decl. (Dkt. 111) ¶ 2) that it has been certified as class counsel in 108 wage and hour cases and that in 82% of them it obtained "33% as a fee percentage." Recon. Mtn. at 7. The firm voluntarily applied for a fee of less than 1/3 in another 4% of its cases, and had its fees cut to less than 1/3 by the court "in only 15% of the cases." *Id.*

[6] *See* Theodore Eisenberg, *et al.*, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 938 (2017). As the Court previously noted, this study showed that the median fee in cases with recoveries between $750,000 and $1.4 million during the period 2009-13 was approximately 29% of the gross settlement. Fee Op. at 8; Eisenberg, *supra*, at 948. Class Counsel now points to Table 4 in the same article, which breaks down the data by type of case and shows that "the median [fee award] percentage of all FLSA class settlements was 33%, with the mean at 30%." Recon. Mtn. at 8. From this, Class Counsel argues that it is "absolutely urgent for the Court to assess a 1/3 fee percentage," because anything lower is "**absolutely** a minority position and causes a severe problem is disincentivizing class counsel from providing adequate representation." *Id.* at 8 (emphasis in the original).

*Second*, it is highly unlikely that LLG's in-house fee award data would have materially influenced the Court's determination as to the appropriate "baseline percentage" at step one, which took into account not only the empirical data gathered by neutral scholars but also – and importantly – facts specific to *this* action, which involved a large number of defendants but was not otherwise complex, and which settled early, for 4% of the "total damages" calculated by Class Counsel, before any depositions were taken or "any collective or class certification motion was made." Fee Op. at 7; *see also*, *e.g.*, *Espinal*, 2019 WL 5425475, at *4 (25% baseline for an FLSA/NYLL case that settled "at an early stage," for a maximum of $345,000, under a reversionary structure); *James v. China Grill Mgmt., Inc.*, 2019 WL 1915298, at *2-3 (S.D.N.Y. Apr. 30, 2019) (30% baseline for an FLSA/NYLL case settled by LLG for $1,220,000, representing "16% of total estimated damages"); *McGreevy*, 258 F. Supp. 3d at 386 (26.5% baseline for a procedurally complex FLSA/NYLL case that settled for $3,281,250, representing 52% of the class members' unpaid wages); *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 597-99 (S.D.N.Y. 2015) (awarding LLG and its co-counsel 20% of an $800,000 class settlement in a "simple and straightforward" FLSA/NYLL case).

*Third*, it is not error, much less "manifest injustice" requiring reconsideration, *see Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992), for a district court to come to a "minority" result regarding a fee application based on the specific facts of the case at bar. That is, in fact, precisely the approach demanded by *Goldberger*, which cautioned that fee "benchmarks," which are at best inexact proxies for the fees to which plaintiffs would agree if able to bargain with counsel in an efficient market for legal services, can "offer an all too tempting substitute for the searching assessment that should properly be performed in each case." 209 F.3d at 52, and reiterated that fee awards should be assessed "based on scrutiny of the unique

circumstances of each case." *Id.* at 53.[7] *See also Espinal*, 2019 WL 5425475, at *2 ("[E]ven if 33.33% were a regularly awarded fee percentage in this Circuit, the Court is well within its discretion to deviate from a 'benchmark embraced by counsel.'") (quoting *Goldberger*, 209 F.3d at 53); *Ortiz*, 89 F. Supp. 3d at 597 (S.D.N.Y. 2015) ("what other courts 'routinely' grant is not in itself sufficient to find that the requested percentage is reasonable in this case").

Class Counsel's next argument – that the Court erred at step two by failing to adjust the fee award upward in light of the risk that counsel took and the result it obtained in this case – fares no better. It is true that the initial phase of the COVID pandemic was a "bleak, and unprecedentedly scary, time" for New Yorkers. Recon. Mem at 9. This was particularly true for minimum-wage workers, like the plaintiffs in this case, who had no remote work option. That LLG's staff also overcame COVID-related hardships while "trying to obtain recovery for class members," *id.*, is admirable, but does not entitle Class Counsel to a larger slice of that recovery.

It is also true that many employers were "threatening shutdown" during the first year of the COVID pandemic. *Id.* at 10. But Class Counsel made no showing in its initial motion papers – and makes none now – that the defendants in *this* action made such threats, much less that their financial condition was so precarious that the modest settlement obtained here (which is commensurate with what Class Counsel has consistently described as the inherent weaknesses of

---

[7] In *Goldberger*, the district court awarded class counsel a fee equivalent to 4% of the $54 million common fund in a successful securities class action, rather than the 25% requested, which at that time was "an established 'benchmark'" in common fund fees." 209 F.3d at 44, 51. On appeal, class counsel argued that the district court abused its discretion by departing so far from the benchmark, *id.* at 51, especially since the class recovered "nearly 90% of what would have been 'provable' class damages of $62 million." *Id.* at 55. The Second Circuit squarely rejected that argument, affirming the award and noting, in passing, that it had "never found that a district court abused its discretion by awarding in a common fund case a fee that counsel assailed as too stingy." *Id.* at 53.

the case, *see* Pl. Fee Mem. at 14-16; Recon. Mem. at 11-15) should be viewed by this Court as "extraordinary" or "superior," as Class Counsel now urges. *Id*. at 10, 11.[8]

Finally, Class Counsel contends that the Court erred at step three in reducing LLG's stated hourly rates (ranging from $800 per hour for partners to $275 per hour for paralegals) by 40% across the board "for cross-check purposes." Fee Op. at 13. Counsel argues that the discounted rates, ranging from $480 per hour for partners to $169 per hour for paralegals, are "outdated" and – to the extent relied on to set or adjust Class Counsel's fee – "unjust." Recon. Mem. at 16.

The short answer to this complaint is that the Court did *not* set or adjust Class Counsel's fee based on its hourly rates (as stated *or* as discounted). It simply noted that the $300,000 fee it awarded represents 3.31 times LLG's modified lodestar, which is "on the high side" but "not so unreasonable as to require a further reduction in Class Counsel's fee." Fee Op. at 13. The same award represents 1.99 times Class Counsel's self-calculated lodestar, which is also well within the range of lodestar multipliers commonly awarded in this Circuit in FLSA/NYLL class settlements.[9]

---

[8]   Class Counsel takes particular exception to this Court's critique of the First Settlement Agreement, under which Class Members would not have been paid unless they submitted fresh tax forms, and defendants would have received "an after-the-fact reversionary windfall," Fee Op. at 11, consisting of the funds allocated but not paid to the Class Members who failed to submit such forms. Class Counsel argues that until this Court spoke, it had no negotiating "leverage" on the issue and no choice but to accept such a structure. Recon. Mem. at 11. This Court, however, broke no new ground with its "negative opinion on reversion." *Id*. As noted in the Fee Opinion, at 11, a number of cases in our Circuit previously made the same point. *See, e.g.*, *Espinal*, 2019 WL 5425475, at *4 (decreasing class counsel's fee award by another 4%, below the baseline, "[i]n order to appropriately account for the significant policy considerations against reversionary settlements"); *McGreevy*, 258 F. Supp. 3d. at 388 (docking class counsel "5% of the baseline fee percentage" because the settlement was reversionary); *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 223-24 (W.D.N.Y. 2017) (noting that "the combination of a reversion clause and a 'clear sailing' clause," in which defendants agree not to oppose counsel's fee request, may "cultivat[e] a conflict of interest between the plaintiff class and class counsel").

[9] *See, e.g.*, *Espinal*, 2019 WL 5425475, at *5 (reducing class counsel's "reported lodestar by 20%" and then awarding fees representing 1.14 times the reduced lodestar); *Siddiky v. Union Square Hosp. Grp., LLC*, 2017 WL 2198158, at *11 (S.D.N.Y. May 17, 2017) (awarding fees equal to "25% of the settlement," representing a multiplier of approximately 1.2 over class counsel's self-

Since the Court did not rely on its lodestar analysis to reduce the fee award, Class Counsel's unhappiness with one component of that analysis cannot warrant reconsideration. *See Shrader*, 70 F.3d at 257 (party seeking reconsideration must identify "controlling decisions or data that the court overlooked" and that "might reasonably be expected to alter the conclusion reached by the court").

## <u>Conclusion</u>

The FLSA and NYLL are remedial statutes, designed to protect employees from unfair labor practices. "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes. Accordingly, the Court must adequately compensate counsel for their efforts. On the other side of the ledger, however, the Court is tasked with guarding the rights of absent class members, and at the fee stage, the Court is the only entity to play that role." *Trinidad*, 2014 WL 4670870, at *12; *see also Goldberger*, 209 F.3d at 52-53 (observing that "the adversary system is typically diluted – indeed, suspended – during fee proceedings," because the defendants have "no incentive to oppose the fee" and the class members "rarely object").

After considering both sides of the ledger, this Court determined that an award of $300,000 – equal to 25% of the gross settlement fund, twice LLG's self-calculated lodestar, and 3.31 times its adjusted lodestar calculated by the Court – fairly compensates Class Counsel for its efforts in this case without either discouraging competent attorneys from championing the rights of workers

---

calculated lodestar); *Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) (approving a 30% fee award, representing "a 2.01 multiplier of the stated lodestar, and a 2.08 multiplier of the adjusted lodestar" calculated by the court after reducing certain hourly rates); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (awarding fees representing 20% of the gross settlement fund, 1.75 times class counsel's lodestar as calculated by counsel, and 2.28 times the "modified lodestar" calculated by the court after reducing counsel's claimed hourly rates); *Trinidad v. Pret a Manger (USA) Ltd.,* 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014) (awarding fees representing 25% of the *net* settlement fund and 1.82 times class counsel's lodestar, "as calculated by the court," after reducing counsel's stated hourly rates).

or encouraging such attorneys to settle in haste on terms more favorable to them than to their

clients. Nothing in Class Counsel's reconsideration motion undermines that determination.

Consequently, the motion (Dkt. 110) is DENIED.

Dated: New York, New York
      August 8, 2022

                   **SO ORDERED**.

                   **BARBARA MOSES**
                   **United States Magistrate Judge**